RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name:  06a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WILLIAM SIM SPENCER,

　　　　　　　　*Plaintiff-Appellant,*

　　　　*v.*

MICHAEL J. BOUCHARD et al.,

　　　　　　　　*Defendants-Appellees.*

> No. 05-2562

---

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 03-40043—Paul V. Gadola, District Judge.

Submitted:  May 4, 2006

Decided and Filed:  June 6, 2006

Before:  MOORE, COLE, and CLAY, Circuit Judges.

---

### COUNSEL

---

**ON BRIEF:**  Keith J. Lerminiaux, OAKLAND COUNTY CORPORATION COUNSEL, Pontiac, Michigan, for Appellees.  William Sim Spencer, Ionia, Michigan, pro se.

---

### OPINION

---

　　　　KAREN NELSON MOORE, Circuit Judge.  Plaintiff-Appellant William Sim Spencer, a Michigan state prisoner proceeding pro se, brought this civil rights action against Defendants-Appellees Michael J. Bouchard, Thomas Quisenberry, Snarey, and Wallace[1] (collectively "the defendants"), all officials with the Oakland County Sheriff's Office. Spencer alleged various claims under the First, Fourth, Eighth, and Fourteenth Amendments.  After the magistrate judge recommended granting dismissal or summary judgment to the defendants on all but one of Spencer's claims, the district court granted summary judgment on all of them.  Spencer's appeal has been referred to a panel of the court pursuant to Sixth Circuit Rule 34(j)(1).  Upon examination, we unanimously agree that oral argument is not needed.  FED. R. APP. P. 34(a).

　　　　Because Spencer has offered sufficient evidence to create a genuine issue of material fact with respect to his Eighth Amendment inadequate-shelter claim against Snarey and Wallace, we **REVERSE** that part of the district court's judgment.  Because Spencer has failed to satisfy the

---

[1]The full names of Snarey and Wallace are not in the record.

1

Prison Litigation Reform Act's ("PLRA") administrative exhaustion requirement with respect to his First Amendment claim against Bouchard, Snarey, and Wallace, his Eighth Amendment inadequate-shelter claim against Bouchard, and all claims against Quisenberry, we **VACATE** that part of the judgment and instruct the district court instead to **DISMISS** the claims without prejudice. Because Spencer has waived review of all other claims, we **AFFIRM** the balance of the judgment. We **REMAND** for proceedings consistent with this opinion.

## I.  BACKGROUND

Spencer was a pretrial detainee at the Oakland County Jail in Pontiac, Michigan from August 15, 2001 to February 4, 2002. In 2003, Spencer filed an action under 42 U.S.C. § 1983 against several officials in the Oakland County Sheriff's Office, which operates the jail: Sheriff Bouchard, Undersheriff Quisenberry, Lieutenant Snarey, and Captain Wallace. Spencer alleged that the defendants violated the First Amendment by providing inadequate reading material; the Fourth Amendment by opening his legal mail; the Eighth Amendment by maintaining overcrowded conditions, denying out-of-cell exercise time, and failing to provide adequately warm and dry shelter; and the Fourteenth Amendment by providing inadequate grievance procedures.

The defendants moved for dismissal for failure to state a claim or, in the alternative, summary judgment. 6 Joint Appendix ("J.A.") at 384-414. The magistrate judge recommended that all claims against Quisenberry and the First Amendment claim against Bouchard, Snarey, and Wallace be dismissed for failure to exhaust the administrative remedies as required by the PLRA. 4 J.A. at 252-54, 260-61 (Report and Recommendation ("R&R") at 5-7, 13-14). Proceeding to the merits, the magistrate judge recommended that summary judgment be denied with respect to the Eighth Amendment claim for inadequate shelter. 4 J.A. at 258 (R&R at 11). Finally, the magistrate judge recommended the grant of summary judgment with respect to each of the remaining claims. 4 J.A. at 262 (R&R at 15). Spencer filed general objections to the magistrate judge's adverse recommendations. 7 J.A. at 465-67. The defendants filed an objection to the magistrate judge's recommendation on the Eighth Amendment inadequate-shelter claim, arguing, inter alia, that they could not be held liable for the failure to act. 7 J.A. at 458-61.

The district court rejected the magistrate judge's recommendation regarding the Eighth Amendment inadequate-shelter claim and reviewed no other aspect of the magistrate judge's report. The district court granted summary judgment to the defendants and dismissed the case with prejudice. Spencer now appeals.

## II.  SCOPE OF THE APPEAL

### A.  Objections to Magistrate Judge's Report

At the outset we must determine which, if any, claims to address on appeal. The magistrate judge's report included a notice requiring objections to be filed within ten days. 4 J.A. at 262 (R&R at 15). A party who receives such notice yet fails timely to object is deemed to waive review of the district court's adoption of the magistrate judge's recommendations. *Mattox v. City of Forest Park*, 183 F.3d 515, 519-20 (6th Cir. 1999); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (upholding the waiver rule as a valid exercise of this court's supervisory power, "at least when it incorporates clear notice to the litigants and an opportunity to seek an extension of time for filing objections"). In the instant case, by granting summary judgment to the defendants on all claims, the district court *rejected* the magistrate judge's recommendations (1) to dismiss all claims against Quisenberry for failure to exhaust under the PLRA; (2) to dismiss the First Amendment claim against Bouchard, Snarey, and Wallace for failure to exhaust under the PLRA; and (3) to deny summary judgment with respect to the Eighth

Amendment inadequate-shelter claim against Bouchard, Snarey, and Wallace. Therefore, Spencer has not waived review of these claims.

The district court did, however, adopt the rest of the magistrate judge's report, so we must assess whether Spencer satisfied the objection requirement for his other claims. Spencer filed several objections, the first of which stated that "Plaintiff OBJECTS to the granting of summary judgment in favor of the defendants regarding Plaintiff's overcrowding Claim because the Complaint, Exhibits, Depositions and Affidavits of record support that the relief requested by Plaintiff regarding this issue should be GRANTED." 7 J.A. at 466. Subsequent objections replaced "overcrowding Claim" with "Cruel and Unusual Punishment/Confinement Claim," "Due Process Regarding the Grievance Procedure Claim," and "Fourth Amendment Claims - Legal Mail," respectively. 7 J.A. at 466-67.

Overly general objections do not satisfy the objection requirement. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380. Spencer's objections simply identified the discrete claims for which the magistrate judge's recommendations were adverse to Spencer and then urged that they instead be resolved in his favor. We have held that "objections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error" are too general. *Id.* Thus, we conclude that Spencer has waived review of all issues other than the claims against Quisenberry and the First Amendment and Eighth Amendment inadequate-shelter claims against Bouchard, Snarey, and Wallace.

## B. PLRA Exhaustion

Having determined that Spencer has preserved certain claims for review, we must next address whether he has satisfied the requirements of the PLRA, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Oakland County Jail provides a two-step grievance procedure in which the inmate first submits a written complaint to the Lieutenant of Corrective Services and then appeals the decision to the Captain of Corrective Services. 2 J.A. at 60. Spencer has attached documents indicating that he followed this procedure. J.A. at 49-51, 57.

Of course, it is not enough simply to follow the grievance procedure; in order to satisfy the administrative exhaustion requirement, the content of the grievances must be adequate, too. First, under our precedent a grievance must identify each defendant eventually sued. *E.g.*, *Curry v. Scott*, 249 F.3d 493, 504-05 (6th Cir. 2001). Spencer's grievances fail to identify (1) Quisenberry in the context of any claims; (2) Bouchard, Snarey, or Wallace in the context of the First Amendment claim; and (3) Bouchard in the context of the Eighth Amendment inadequate-shelter claim. Accordingly, Spencer failed to exhaust these claims. We **VACATE** the district court's grant of summary judgment to Quisenberry on all claims; to Bouchard, Snarey, and Wallace on the First Amendment claim; and to Bouchard on the Eighth Amendment inadequate-shelter claim. The district court is instructed instead to **DISMISS** these claims without prejudice.

One of Spencer's grievances does, however, name Snarey and Wallace in the context of the Eighth Amendment inadequate-shelter claim. We therefore proceed to the second requirement regarding the content of grievances: "a prisoner must have alleged mistreatment or misconduct on the part of the defendant" in his grievance. *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). This standard is not a particularly strict one:

> In describing the alleged mistreatment or misconduct, . . . we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.

*Id*. This relaxed standard is consistent with the general practice of liberally construing pro se prisoners' filings. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). Spencer's grievance easily meets this burden, as it includes details of disregard by Snarey and Wallace of the cold, wet conditions — the very facts that form the basis of the Eighth Amendment inadequate-shelter claim in this suit. Based on the foregoing analysis, we conclude that Spencer exhausted the available administrative remedies with respect to his Eighth Amendment inadequate-shelter claim against Snarey and Wallace.

Our conclusion means that Spencer's complaint was "mixed," i.e., it included both exhausted and unexhausted claims. We are therefore confronted with an issue that has recently vexed this court: when a prisoner submits a mixed complaint, do we apply a rule of partial exhaustion that permits his exhausted claims to proceed or a rule of total exhaustion that requires the entire complaint to be dismissed? We faced a similar situation in *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999). There, the prisoner had exhausted his Eighth Amendment claim against three defendants but had failed to exhaust his claim against two others. *Id.* at 309. We dismissed without prejudice the unexhausted claims and reached the merits of the exhausted claims. *Id.* at 309-10. Of course, we would have been unable to reach the merits of the exhausted claims under a total-exhaustion regime, so a holding that a prisoner's exhausted claims survive the dismissal of any unexhausted claims was necessary to the result in *Hartsfield*.

A panel of this court recently seized upon the implicit nature of this holding in deeming the issue "an open question in this circuit" even after *Hartsfield*. *Bey v. Johnson*, 407 F.3d 801, 805 (6th Cir. 2005), *petition for cert. filed*, 74 U.S.L.W. 3424 (U.S. Jan. 9, 2006) (No. 05-874). It then purported to "definitively answer" the question by requiring the total dismissal of mixed complaints. *Id.*; *accord Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006). The *Bey* panel was apparently unaware, however, that we had already explicitly reaffirmed *Hartsfield*'s implicit partial-exhaustion holding *two years before Bey* was decided. In *Burton v. Jones*, we explained that "the *Hartsfield* holding illustrates that a prisoner's lawsuit, which alleges multiple claims against multiple defendants, is not vulnerable to dismissal under § 1997e(a) simply because the prisoner has failed to exhaust a particular claim as to a specific defendant." 321 F.3d at 574 n.2. In other words, there was no need for *Bey* to "definitively answer" the question, as *Hartsfield* and *Burton*, taken together, had already done so.

We note that the Supreme Court has granted certiorari to resolve the partial-/total-exhaustion quandary. *Williams v. Overton*, — U.S. —, 126 S. Ct. 1463 (2006); *Jones v. Bock*, — U.S. —, 126 S. Ct. 1462 (2006). In the meantime, however, we have an obligation to decide the case before us. Because *Hartsfield* and *Burton* were decided before *Bey*, we conclude that the partial-exhaustion rule is the law of this circuit. *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); 6TH CIR. R. 206(c) (a later panel cannot overrule a prior panel's published opinion).

We now proceed to the merits of Spencer's Eighth Amendment inadequate-shelter claim against Snarey and Wallace.

## III.  EIGHTH AMENDMENT CLAIM

### A.  Standard of Review

We review de novo a district court's grant of summary judgment.  *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006).  Summary judgment is "rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmovant.  *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In making this determination, we must view the facts and the inferences drawn therefrom in the light most favorable to the nonmovant.  *Bell v. United States*, 355 F.3d 387, 392 (6th Cir. 2004).

### B.  Merits

Spencer's claim is based on the conditions of his pretrial detention.  The Eighth Amendment forbids the infliction of "cruel and unusual punishments."  U.S. CONST. amend. VIII.  Because the Cruel and Unusual Punishments Clause "is concerned" with punishment by the state "after it has secured a formal adjudication of guilt in accordance with due process of law," *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977), it does not apply to pretrial detainees.[2]  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).  However, state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause,[3] *e.g.*, *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005), which provides similar if not greater protections than the Cruel and Unusual Punishments Clause, *County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998); *Bell*, 441 U.S. at 545.  For the sake of simplicity, we refer to the Eighth Amendment in the following discussion.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  An Eighth Amendment conditions-of-confinement claim has two elements.  "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Id.* at 834 (internal quotation marks and citations omitted).  Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety."  *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

---

[2]We have on occasion spoken in terms of the Amendment itself (rather than simply the Clause) not applying to pretrial detainees.  *See, e.g.*, *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992).  Such statements were too broad, as the Excessive Bail Clause clearly applies to federal pretrial detainees, *see, e.g.*, *United States v. Salerno*, 481 U.S. 739, 752 (1987), and probably applies to state pretrial detainees, too, *see Schilb v. Kuebel*, 404 U.S. 357, 365 (1972) (assuming incorporation); 1 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 2.6(b) (2d ed. 1999) ("[L]ower court rulings . . . have unhesitantly viewed [the Excessive Bail Clause] as applicable to state proceedings through the Fourteenth Amendment.").

[3]Federal pretrial detainees are similarly protected by the Fifth Amendment's Due Process Clause.  *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005).

### 1. Sufficiently Serious Deprivation

Spencer complains that the state provided inadequate shelter during his pretrial detention by subjecting him to cold, wet conditions. Shelter is, of course, one of the basic needs enumerated in *Farmer*, so the question is whether Spencer's shelter was constitutionally inadequate. We have held that the Eighth Amendment may be violated when prison officials provide inadequate clothing to inmates required to go outside in the winter. *Knop v. Johnson*, 977 F.2d 996, 1012-13 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993). So, too, may the Eighth Amendment be violated when prison officials let the cold inside, exposing inadequately protected inmates. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting that "a low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation); *Franklin v. Franklin*, No. 97-4365, 2000 WL 687434, at *4 (6th Cir. May 16, 2000) (unpublished opinion). Because "[t]he circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred," *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001), we turn now to the specifics of Spencer's claim.

Spencer was detained in cell I-R4 from September 1, 2001 to February 4, 2002, i.e., during the fall and winter. 1 J.A. at 18 (Compl. ¶¶ 13, 19); 2 J.A. at 112-13 (Wilhelm Dep. ¶ 6). For more than ninety days of this period, he had to sleep on a mattress on the floor due to overcrowding. 1 J.A. at 20 (Compl. ¶ 34); 2 J.A. at 115 (Wilhelm Dep. ¶ 21). Spencer's cell block was "very cold," prompting the complaints of other inmates. 2 J.A. at 115 (Wilhelm Dep. ¶¶ 12, 18). It was particularly cold at the end of the cell block where Spencer's cell was located. 2 J.A. at 115 (Wilhelm Dep. ¶ 20). Although it was cold enough for the officers to wear their winter coats indoors, Spencer and the other inmates were dressed only in their standard jumpsuits. 1 J.A. at 20 (Compl. ¶ 40), 35 (Spencer Aff. ¶ 25). Worse yet, whenever it rained or snowed, water leaked "real bad" through the ceiling above Spencer's mattress. 2 J.A. at 115 (Wilhelm Dep. ¶ 22). The leaks caused the area where Spencer slept to be flooded. 1 J.A. at 20 (Compl. ¶ 35), 42 (Spencer Aff. ¶ 57).

Although Spencer's evidence is sufficient to conclude that it was cold inside his cell, there is some question as to just how cold it was.[4] We observe, however, that Spencer's evidence is also sufficient to conclude that he lived in cold temperatures *continuously for several months* (including all of December and January), subject only to the occasional relief of an unseasonably warm day. By way of comparison, the *Knop* inmates experienced more direct contact with the cold when they were forced to go outdoors without adequate clothing, but this exposure obviously was not continuous; and Franklin was continuously exposed to "close to freezing" temperatures inside his cell, but for "only" twenty-two days. *Franklin*, 2000 WL 687434, at *1, *4. Because even "modest deprivations can . . . form the objective basis of a violation . . . if such deprivations are lengthy or ongoing," *Johnson*, 217 F.3d at 732, we have little trouble concluding that any doubts about the severity of the cold in the instant case are compensated by the duration of Spencer's exposure to it. And this is before we add to the scales the evidence that large quantities of water leaked onto Spencer's bed whenever it rained or snowed. Thus, Spencer has presented sufficient evidence to create a genuine issue of material fact with respect to the objective component of his Eighth Amendment claim.

### 2. Deliberate Indifference

The deliberate-indifference requirement is satisfied "only if [the official] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures

---

[4]Spencer alleges that ice formed on the walls, 1 J.A. at 20 (Compl. ¶ 41), but his complaint was not verified and he has offered no evidence to support this allegation.

to abate it." *Farmer*, 511 U.S. at 847. The Supreme Court has explicitly acknowledged that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. The instant case would seem to be the perfect candidate for imputing knowledge based on the obviousness of the risk, for two reasons having to do with salient features of the particular risk at issue here. First, unlike conditions that can be hidden (such as the threat of violence from another inmate), the fact that cold, wet conditions existed would have been obvious to anyone in the vicinity. (Snarey and Wallace might have been ignorant of the risk if they had never set foot in the area, but there is no indication in the record that they were so derelict in their duties.) Second, although jail officials might be unaware (due to unfamiliarity) that certain conditions are dangerous, the fact that exposure to cold, wet conditions for months at a time is a substantial risk is so obvious as to merit no further discussion.

We need not rely solely on the obviousness of the risk, however, because Spencer has offered much evidence in support of the deliberate-indifference element. Snarey and Wallace were among the officers seen wearing their winter coats indoors. 1 J.A. at 20 (Compl. ¶ 40), 35 (Spencer Aff. ¶ 25). They also personally received complaints about the cold, wet conditions from Spencer and other inmates. 2 J.A. at 114, 115-16 (Wilhelm Dep. ¶¶ 12, 23-26). Therefore, Snarey and Wallace obviously knew "that inmates face[d] a substantial risk of serious harm." *Farmer*, 511 U.S. at 847. The very fact that the cold, wet conditions persisted for months demonstrates that the two officers "disregard[ed] th[e] risk by failing to take reasonable measures to abate it," *id.*, such as by providing adequate clothing and blankets, fixing the leaks, bringing in heaters, or moving the inmates to other quarters. In fact, Snarey and Wallace went the extra step of actively interfering with the inmates' own arguably reasonable attempts to abate the risk. First, when they received complaints about the cold, the two officers responded by conducting "shake downs" and confiscating extra blankets that any inmates had obtained on their own. 1 J.A. at 20 (Compl. ¶¶ 44-45); 2 J.A. at 114 (Wilhelm Dep. ¶ 12). Second, Snarey and Wallace repeatedly tore down "awnings" fashioned out of garbage bags that Spencer and his cellmates had attached to the ceiling in an attempt to divert the leaks away from Spencer's bed. 1 J.A. at 20 (Compl. ¶¶ 36-37), 42 (Spencer Aff. ¶ 57); 2 J.A. at 115-16 (Wilhelm Dep. ¶¶ 22-25). The officers' obstruction of the inmates' attempts to help themselves apparently served no penological purpose, as Snarey once said to Spencer while tearing down an awning, "It's your own damn fault you [sic] in here so deal with it!" 2 J.A. at 116 (Wilhelm Dep. ¶ 26). Thus, we conclude that Spencer has offered sufficient evidence of deliberate indifference to survive summary judgment.

\* \* \*

The defendants press only one argument in urging us to affirm the district court on this claim: "supervisory liability under § 1983 cannot be based on a mere failure to act." Appellee Br. at 17. This proposition is, of course, true. *See, e.g.*, *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) ("Supervisory liability under § 1983 cannot be based upon a mere failure to act but must be based upon active unconstitutional behavior."). Yet the defendants' reliance on it here is misplaced, as Spencer's claim is based on the active unconstitutional conduct of Snarey and Wallace themselves rather than on their supervision of others engaging in unconstitutional conduct.[5] In fact, there is no indication in the record that Snarey and Wallace actually supervised anybody at all. The oddity of invoking the obviously inapplicable failure-to-act doctrine here leads us to believe that the defendants understand the doctrine to reach beyond supervisors to direct actors, too. This reflects a serious misunderstanding of Eighth Amendment law, which we aim to correct.

---

[5]A failure to act also does not give rise to § 1983 liability for state-created-danger claims, *see, e.g.*, *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) ("[F]ailure to act is not an affirmative act under the state-created danger theory."), but Spencer's claim is not premised on this doctrine.

The phrase "failure to act" has a lay meaning; colloquially, a "failure to act" is an omission. Yet the phrase is also a legal term of art that means the absence of state action, which is required for most constitutional claims. A colloquial "failure to act" (i.e., an omission) often will translate into a legal "failure to act" (i.e., the absence of the element of state action). This equivalence is precisely what the defendants are attempting to establish. According to the defendants, they colloquially failed to act by not addressing the jail's wet, cold conditions, so they also legally failed to act and therefore are not liable.

What the defendants miss, however, is that in the prison context, an omission often *is* state action, which means that a colloquial "failure to act" often is *not* a legal "failure to act." As the Supreme Court has explained, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time *fails to provide* for his basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on *state action* set by the Eighth Amendment and the Due Process Clause." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200 (1989) (emphases added); *see also Farmer*, 511 U.S. 832 (explaining that the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984))). The obligation to "provide" these basic needs would have no meaning if a prison official could fail to provide them and then evade liability simply by pleading that he "failed to act." That is why the Supreme Court has explicitly stated that a prisoner's Eighth Amendment claim may be based on "a prison official's act or *omission*."[6] *Farmer*, 511 U.S. at 834 (emphasis added); *see also id.* at 836 (discussing "acting or *failing to act* with deliberate indifference" (emphasis added)). Thus, it is clear that Spencer's Eighth Amendment claim may properly be premised on the defendants' failure to provide adequate shelter.

## IV. CONCLUSION

For the reasons set forth above, we **REVERSE** in part, **VACATE** in part, and **AFFIRM** in part the district court's order granting summary judgment to the defendants and **REMAND** for proceedings consistent with this opinion.

---

[6]*Farmer* itself involved a quintessential failure to act: the "failure to prevent harm." 511 U.S. at 834.