NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0439n.06
Filed: July 25, 2008

No. 07-1889

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| Floyd Edwards, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| UAW Nat'l Ford Dep't, The United Automobile, | ) COURT FOR THE EASTERN |
| Aerospace and Agricultural Implement Workers | ) DISTRICT OF MICHIGAN |
| of America; Public Review Board, International | ) |
| Union, | |
| | |
| Defendants-Appellees. | |

Before:        KEITH, SUTTON, Circuit Judges; and ACKERMAN, District Judge.[*]

DAMON J. KEITH, Circuit Judge.  Plaintiff-Appellant Floyd Edwards ("Edwards") appeals

the dismissal of his claim on summary judgment, contests the sanctions imposed on Edwards's

attorney pursuant to Fed. R. Civ. P. 11, and claims that he is entitled to damages under Title VII of

the Civil Rights Act of 1964.  Because the district court did not err in determining that there was no

genuine dispute of material fact and because this Court does not have jurisdiction over the remaining

issues, we AFFIRM.

I.  Background

On July 12, 2006, Edwards filed in Wayne County Circuit Court the instant suit entitled

"Plaintiff's Complaint for Damages and/or Other Equitable Relief; and/or for Enforcement of

_____

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District
of New Jersey, sitting by designation.

Collective Bargaining Agreement." (J.A. 12.) The suit claimed: "Count 1 - Discrimination: Union Bias"; "Count 2 - Collusion with Management"; "Count 3 - Specific Error of Fact; Breach of Contract."[1] (J.A. 13-15.) Edwards's suit was removed to federal court on July 31, 2006. On June 12, 2007, the district court granted Defendants' motions for summary judgment and referred the matter of sanctions to a magistrate judge. *Edwards v. UAW Nat'l Ford Dep't*, 2007 WL 1695715 (E.D. Mich. June 12, 2007) ("*Edwards I*"). After a hearing, the magistrate judge issued a report recommending sanctions of $11,394.75 to be paid by Edwards's attorney. The district court issued an order on August 16, 2007, adopting the magistrate judge's recommendation. *Edwards v. UAW Nat'l Ford Dep't*, 2007 WL 2907360 (E.D. Mich. August 16, 2007).

The particular factual circumstances leading to the current action were never set forth by Edwards at any time during these proceedings, so this Court relies on those facts outlined by the district court. Edwards is an African-American male who had worked for Ford Motor Company and its spin-off, Visteon, for over forty years. As a result of company downsizing, Edwards was transferred to a different job, the duties of which he failed to perform in a satisfactory fashion. Edwards, after an extended training and testing period, was eventually transferred to a slightly lower paid position that he could perform proficiently. The district court characterized the events surrounding his transfer as follows:

> **1. *Transfer and training.*** Edwards transferred from his Department 38 job-setter position to a Department 39 job-setter position on October 29, 2001 when the company downsized Department 38. Edwards'[s] work changed from making bearing race cups in Department 38 to making spider u-joints in Department 39. When he first transferred, Edwards was placed on the night shift and paired with

---

[1]The precise nature of Edwards's claim is unclear.

another job-setter to facilitate Edwards'[s] training in his new assignment. []

Job-setter training usually requires "no more than 2-3 weeks."[] Typically, the company allows an employee up to 60 days to become proficient. [] After Edwards had been in the new assignment for approximately four months, the company determined that Edwards had not developed the knowledge and proficiency necessary to do his job without assistance. The company transferred Edwards to the day shift to work with knowledgeable job-setters in an effort to bring his performance to an adequate level. After Edwards worked and trained for several months on the day shift, the company tested his ability to perform the job-setter work. []

**2. *Testing and disqualification.*** Edwards failed the tests. During a June 5, 2002 UAW evaluation, Edwards was "stopped three separate times"—"once for not following the proper sequence, once for safety . . . and once again for creating an improper move"—and "was not able to successfully complete the task." [] During a June 11, 2002 test by management, monitored by the union, Edwards was asked to change grinding wheels and set up machinery for production. Edwards needed assistance and took one hour and 25 minutes to complete a task which on the "high side" should have taken one hour without assistance. [] During a July 23, 2002 test by management of Edwards'[s] ability to change the dimensions of an end grinder, monitored by the union, Edwards chipped two grinding wheels and another job-setter had to finish the assigned task. []

Based on Edwards'[s] "inability to perform the job without significant assistance," the company disqualified him as a job-setter on July 30, 2002. Edwards transferred to a position as Department 249 cleaner. [] As a cleaner, Edwards earned $22.61 per hour, 62¢ an hour less than the rate he earned as a job-setter. [] Department 39 was "eliminated a few months after Edwards was disqualified." []

**3. *The grievance.*** UAW Local 228 filed a grievance on August 1, 2002 challenging the disqualification, requesting Edwards'[s] restoration to the job-setter assignment, a "make whole" remedy, and that Edwards "continue his training." [] The company denied the grievance, responding that the company complied with its contract obligations and did more, giving Edwards seven months of training time—which was "unusually lengthy"—and accommodating Edwards with training plans, assistance from proficient job-setters, and transfer to the day shift (at the night shift premium rate) to facilitate his training. Despite this, the company responded, Edwards was unable to demonstrate the required proficiency and could not perform the job without "significant assistance." []

*Edwards I*, 2007 WL 1695715, at *1-2.

Since the filing of his grievance, Edwards made a number of additional efforts to challenge

his transfer including: (1) a state court race and age discrimination lawsuit which was dismissed and

not appealed, *Edwards et. al. v. Ford Motor Co. et al*, Wayne County Circuit Court 02-238370; (2)

an unfair labor practice charge, which the National Labor Relations Board ("NLRB") dismissed and

for which the NLRB in Washington, D.C., denied Edwards's appeal; (3) an age discrimination

charge, which he later withdrew, with the Michigan Department of Civil Rights ("MDCR"); (4)

another charge, which was dismissed, with the MDCR; (5) a 42 U.S.C. § 1981 race discrimination

lawsuit which was dismissed on summary judgment; (6) an unsuccessful appeal to the International

Executive Board of the UAW for the UAW local's decision to withdraw its grievance prior to

arbitration; and (7) an unsuccessful appeal to the Public Review Board ("PRB"). *See Edwards I*,

2007 WL 1695715, at *2-4.

## II. Summary Judgment

Edwards argues on appeal that the district court erred in granting summary judgment to

defendants UAW and the Public Review Board ("PRB") because "there are many issues, and there

is genuineness of the issues as to many material facts, and the moving party is not entitled to any

judgments as a matter of law." Appellant's Brief at 8.

This Court reviews *de novo* a district court's grant of summary judgment. *Garrish v. UAW*,

417 F.3d 590, 594 (6th Cir. 2005). Summary judgment is proper where "the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c);

*see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986). In evaluating whether there is a genuine issue of material fact, the Court must

"view the evidence in the light most favorable to the non-moving party, drawing all reasonable

inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The district court granted summary judgment to defendants because Edwards "failed to generate any dispute as to the facts of the case," did "not cite to any evidence, case law, or exhibits," and "conducted no discovery in this case." *Edwards I*, 2007 WL 1695715, at *5. Even after the district court's admonishment, Edwards's arguments on appeal consist of nothing more than a set of conclusory allegations that are supported by neither facts nor law. The entirety of his analysis reads as follows:

> 1. *Transfer and training:* The company's allegations are merely a pretense and are pretextual for a blatant form of discrimination.
> 2. *Testing and disqualification:* The self-serving tests were biased ab initio and aimed at a result of harassing Plaintiff-Appellant.
> At the time these tests were administered, Plaintiff-Appellant already had such a great amount of seniority with the company, that there was a total lack of purpose for said tests and lack of any rational basis.
> 3. *The grievance:* Plaintiff-Appellant had a valid grievance which was filed.
> 4. *The first unsuccessful lawsuit was due to the fact that Plaintiff's attorney did not appear at hearing.*
> 5. *Re: NLRB action filed*: Neither Plaintiff nor counsel has actual knowledge as to this complaint or decision.
> 6. *Edwards civil rights charges:* Civil rights charges are neither successful nor unsuccessful, the claimant here merely stated the facts. The court states that there was no recourse.
> 7. *Withdrawal of union grievance:* This is meaningless because it may not be presumed that the union did not pressure Appellant into withdrawing his grievance.
> 8. *Re IEB Appeal:* Mr. Edwards had some very valid issues here that were not considered. Again, the writer suspects that Appellant may not have had objective consideration.
> 9. *Re second lawsuit:* The facts given are not correct.
> 10. *PRB proceedings:* These are currently being challenged.

Appellant's Brief at 11-12. Taken together, Edwards has not presented a coherent argument relating

to the question at hand—whether there exists a genuine issue of material fact that merits reversal of summary judgment. Based on our review of the record and applicable law, we see no error in the district court's decision, and AFFIRM the district court's grant of summary judgment in favor of defendants.

## III. Sanctions

This Court does not have jurisdiction over Edwards's appeal of sanctions because he failed to file a notice of appeal from the district court's August 16, 2007 order imposing sanctions. Even if we had jurisdiction, moreover, Edwards waived his right to challenge the sanctions decision by failing to object to the magistrate's recommendation. The magistrate judge, who recommended granting sanctions on July 30, 2007, warned Edwards of the need to seek review, stating:

> The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

(J.A. 415.) Edwards never appealed within the ten day period, and the district court issued its order adopting the magistrate's recommendation of sanctions on August 16, 2007. Edwards thus waived his right to appeal the award of sanctions over the issue. *Spencer v. Bouchard*, 449 F.3d 721, 724 (6th Cir. 2006) ("A party who receives . . . notice [requiring objections to be filed within ten days] yet fails to timely object is deemed to waive review of the district court's adoption of the magistrate judge's recommendations."); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Therefore, this Court will take no further action with regard to this question.

## IV.  Title VII

Similarly, this Court does not have jurisdiction over Edward's alleged Title VII claim because Edwards never filed a Title VII claim.  It is elemental that our Court does not have jurisdiction over claims that have never been filed.  This Court will take no further action on this question.

## V.  Conclusion

For the foregoing reasons, we AFFIRM.