**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0050n.06
Filed: January 22, 2009

No. 08-5186

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GIKLIN ARAUZ, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| RICKY BELL, Warden; | ) | COURT FOR THE MIDDLE |
| GEORGE LITTLE, Commissioner; | ) | DISTRICT OF TENNESSEE |
| POLAN, Assistant Commissioner; | ) | |
| MIKE CRUTCHER, Deputy Warden; | ) | |
| SANDRA HALL, Unit Manager; | ) | **O P I N I O N** |
| VINCENT MEAKER, Counselor; | ) | |
| E. CREECH, Counselor, | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | |
| | ) | |

Before: MOORE, CLAY, and KETHLEDGE, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Giklin Arauz ("Arauz"),

a pro se litigant incarcerated in Tennessee, appeals the dismissal under 28 U.S.C. § 1915A(b) of his

claims that the defendants-appellees, employees of the Tennessee Department of Corrections

(collectively, "TDOC"), violated his civil rights by keeping him in administrative segregation for an

indeterminate time period without the required review hearings. On appeal, Arauz brings claims

under 42 U.S.C. § 1981, § 1983, § 1985(3), and § 1986. Arauz also asserts that TDOC's actions

violated his rights under the First, Eighth, and Fourteenth Amendments. Arauz asks us to reverse

the district court's dismissal of his claims as frivolous under 28 U.S.C. § 1915A(b)(1). We

**AFFIRM** the district court's dismissal of Arauz's § 1981, § 1985, and § 1986 claims. We **REVERSE** the district court's dismissal of Arauz's remaining claims and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND[1]

Arauz is currently incarcerated at the Riverbend Maximum Security Institution ("Riverbend") in Nashville, Tennessee. The events underlying this lawsuit began in May 2005 while Arauz was incarcerated at the Turney Center Industrial Prison and Farm. On May 20, 2005, a TDOC employee filed a disciplinary report alleging that Arauz was part of a prison gang that was using threats and intimidation to recruit other inmates. May 20, 2005 Disciplinary Rep. Attach. to Compl. This report stated that Arauz would be placed in administrative segregation pending investigation. *Id.* Five days later, a more detailed disciplinary report asserted that as part of this gang activity, Arauz was planning to stab another inmate in an effort to "make a name for" the gang. May 25, 2005 Disciplinary Rep. Attach. to Compl. The report described this behavior as "participation in a security threat group activity." *Id.*

Arauz went before the disciplinary board on June 3, 2005. The board found Arauz guilty of "Participate Security Threat Group Activity" and, in addition to other sanctions, recommended that Arauz be placed in administrative segregation. June 3, 2005 Disciplinary Rep. Hr'g Summ. Attach. to Compl. The board's report noted that Arauz had been in administrative segregation pending

---

[1]Because the applicable standard of review requires us to view the facts alleged in the complaint in the light most favorable to Arauz, the facts in this section are drawn largely from his complaint. *See Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). We are also permitted to consider materials attached to the complaint, and we will reference exhibits that Arauz attached to his complaint when these attachments clarify matters. *See Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (permitting an appellate court reviewing a Rule 12(b)(6) dismissal to consider materials attached to a complaint).

hearing since May 25, 2005. *Id.* Following the hearing, Arauz was officially placed in administrative segregation. Admin. Segregation Placement Attach. to Compl. The document memorializing this placement stated that he was being placed in administrative segregation because of his involvement with a security threat group. *Id.* On June 28, 2005, Arauz appealed the disciplinary board's decision to the warden. On July 13, 2005, the Warden dismissed the charges against Arauz "due to no signatures by board members on the hearing summary." Disciplinary Decision Appeal Detail Attach. to Compl. A document dated August 18, 2005 reflects the fact that the disciplinary board's decision was "REVERSED ON APPEAL–NOT GUILTY." *Id.*

After the disciplinary charges against him were dismissed, Arauz remained in administrative segregation. In late September or early October of 2005, Arauz was transferred to Riverbend, another TDOC prison. Arauz remained in administrative segregation at Riverbend until April 18, 2007. While he was in administrative segregation, members of the administrative-segregation review board periodically came to the door of his cell and informed Arauz that his administrative segregation was being continued. Arauz suggests that these visits were cursory and asserts that he did not receive the monthly hearing regarding his continued segregation that TDOC policy requires. A month before he was released from administrative segregation, Arauz filed a grievance asserting that his continued administrative segregation was a violation of his constitutional rights. Inmate Grievance Attach. to Compl. Prison officials denied his request for release from administrative segregation. When Arauz was released from administrative segregation in April 2007, he was placed in close custody which, he asserts, is the same as administrative segregation.

Arauz filed the instant action in October 2007. In his complaint, Arauz asserts that TDOC's actions violated his rights under 42 U.S.C. §§ 1981, 1985(3), and 1986 and under the First, Eighth,

3

and Fourteenth Amendments. Arauz detailed four arguments before the district court: (1) he was deprived of his First Amendment right to freedom of religion because he was not allowed to attend religious meetings while he was in administrative segregation; (2) his stay in administrative segregation violated his Eighth Amendment rights because he suffered "severe mental psychological and emotional stress, discomfort, depression, confusion, anger, aggravation, [and] pain" which caused him to attempt suicide twice and because he was denied access to "caps, sunglasses, sweat pants, [and] sweat shirts[s]"; (3) TDOC violated his rights to equal protection by keeping him in administrative segregation "because of his [Hispanic] race"; and (4) his indefinite stay in the very restrictive conditions of administrative segregation violated his rights to due process. Compl. at 6-8. The district court found that a portion of Arauz's § 1983 claims were barred by the statute of limitations and dismissed the rest of Arauz's claims as frivolous under 28 U.S.C. § 1915A(b).

On appeal, Arauz asserts that his claims are not frivolous and makes seven arguments: (1) he was denied the "equal benefit of the laws" under 42 U.S.C. § 1981 when he was kept in administrative segregation because of his race, Arauz Br. at 1; (2) his civil rights protected by § 1983 were violated, and the statute of limitations should not bar his claim because he was incarcerated and unable to speak English at the time his claim accrued; (3) worshiping with others is a necessary component of his religion that he was denied while in administrative segregation; (4) he has established an Eighth Amendment violation because he was denied adequate clothing while in administrative segregation and because he tried to commit suicide while in administrative segregation; (5) TDOC overturned his conviction for threat-group activity, but he was kept in administrative segregation because of his race, in violation of the Equal Protection Clause; (6) he suffered serious deprivations while in administrative segregation and his indefinite housing there

4

violated his due-process rights; and (7) his §§ 1985(3) and 1986 claims should go forward and the question of whether the defendants "conspired" should be reserved for trial.

## II.  ANALYSIS

### A.  Standard of Review

"We review de novo a district court's dismissal of a complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b)." *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  "[A] complaint should be dismissed as frivolous only if it lacks an arguable basis in law or fact.  A complaint lacks an arguable basis in law or fact if it contains factual allegations that are 'fantastic or delusional' or if it is based on legal theories that are indisputably meritless." *Brown*, 207 F.3d at 866 (citation omitted) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  Additionally, we hold pro se pleadings, such as Arauz's, to "'less stringent standards'" than those drafted by lawyers. *Thomas*, 481 F.3d at 437 (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  While conducting this review, we "view[] all the facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff." *Brown*, 207 F.3d at 867.

### B.  Section 1981 Claims

We have held that "§ 1983 provides an exclusive remedy for violations against state actors sued in their official capacities.  An official capacity lawsuit against . . . a state actor, for constitutional violations, such as race discrimination, cannot be brought under § 1981." *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).  Therefore, to the extent that Arauz is suing the defendants in their official capacities, his claims that the defendants violated his civil rights cannot

be considered in the context of his § 1981 claim.[2]  Additionally, the Supreme Court has held that it is "well established that . . . 42 U.S.C. § 1981[] prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).  Arauz's complaint and appellate brief do not provide sufficient facts or legal argument to indicate that he has a non-frivolous claim under this traditionally contracts-focused statute.

## C.  Section 1983 Claims[3]

### 1.  Statute of Limitations

The district court concluded that the statute of limitations began to run on Arauz's § 1983 claims as soon as he was placed in administrative segregation.  "In all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is to be applied.  Tennessee's limitations period for actions brought under federal civil rights statutes or for personal injuries is one year." *Berndt v. Tenn.*, 796 F.2d 879, 883 (6th Cir. 1986) (citations omitted).  Applying this one-year statute of limitations, the district court concluded that claims related to events that occurred before September 23, 2006 were barred by the statute of limitations.[4]

---

[2]Arauz's complaint does not state whether he is suing the defendants in their official or individual capacities.  However, construing this pro se pleading liberally, we assume that Arauz intended to sue them in both their official and individual capacities.

[3]Although Arauz's complaint does not cite 42 U.S.C. § 1983 except in its title, it is clear that his suit is based on violations of his civil rights.  We construe pro se pleadings liberally, and will therefore consider Arauz's § 1983 claims that TDOC violated his civil rights. *See Boswell v. Mayer*, 169 F.3d 384, 387-88 (6th Cir. 1999).

[4]In calculating this date, the district court concluded that the statue of limitations had been tolled for nine days while Arauz was pursuing administrative remedies between March 18 and March 26, 2007.

6

We hold that the district court erred when it determined that the statute of limitations began to run as soon as Arauz was placed in administrative segregation.[5] Federal law determines when the statute of limitations begins to run, and under federal law, "the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). The Supreme Court has held that the administrative segregation of prisoners does not necessarily implicate those prisoners' constitutional rights in a case involving only thirty days of administrative segregation. *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995). Instead, as discussed below, when determining whether such segregation implicates protected rights, a court must consider the "nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence." *Harden-Bey v. Rutter*, 524 F.3d 789, 792 (6th Cir. 2008). When he entered administrative segregation at Riverbend in the fall of 2005, Arauz could not have known how restrictive the conditions would be or how long he would be segregated and what administrative safeguards would be provided. Especially given the dearth of facts before us, it is difficult to select an exact moment at which Arauz's segregation became so restrictive and prolonged as to put him on notice that he should have known of his injury. We therefore **REVERSE** the district court's conclusion that the statute of limitations began to run when Arauz entered administrative segregation and **REMAND** for consideration of all issues pertinent to the statute of limitations.[6]

---

[5]We also note that the statute of limitations is typically an affirmative defense. *See, e.g.*, *Griffin v. Rogers*, 308 F.3d 647, 652-53 (6th Cir. 2002). The state has not appeared in this case, and the question of when the statute of limitations began to run seems too complicated to be resolved on the face of the complaint without the benefit of briefing from both sides.

[6]We note that Arauz filed a grievance with prison officials on March 18, 2007, which asserted that his constitutional rights had been violated. If this grievance is taken as a benchmark

7

### 2. First Amendment Claims

Arauz alleges that TDOC violated his First Amendment rights by prohibiting him from attending religious meetings while he was in administrative segregation. "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). Assuming that Arauz has shown a sincere belief that his religion requires meeting and worshiping with others, we apply the test set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987), to determine whether this restriction is invalid. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.*; *see also Beard v. Banks*, 548 U.S. 521, 537 (2006) (Scalia, J., concurring in judgment) (noting that plurality and dissent both apply *Turner* standard to evaluate inmate's First Amendment claim); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (applying *Turner* standard to inmate's First Amendment claim). The Supreme Court has identified four factors that are relevant to this analysis: the connection between the regulation and the government interest; the availability of alternative means for exercising the right; the impact of the requested accommodation on the prison; and the absence of ready alternatives. *Id.* at 89-91.

Because this case was dismissed before TDOC filed any responsive pleadings, we do not have information before us about all of these factors. We have noted that "[m]ost religious faiths give a central role to congregate religious services" and that "[g]overment should consider the matter

---

that Arauz knew of his injury at that point, the statute of limitations does not bar any of his claims as he filed his complaint with the district court on October 3, 2007, within a year of filing his prison grievance.

carefully before walling prisoners off from congregate religious services." *Walker v. Mintzes*, 771 F.2d 920, 930 (6th Cir. 1985). However, "[t]he courts have consistently held that when prison officials offer evidence that security concerns prevent them from providing congregate religious services to inmates in administrative segregation, the deprivation is not violative of the first amendment so long as the inmates' rights of conscience are not infringed and they can request individual religious counseling." *Id.* Because we do not have information about the security concerns that prevented the prison from allowing Arauz to attend religious services and because we do not know if individual religious counseling was available to him, we hold that the district court erred in dismissing this claim as frivolous, and we **REMAND** for further proceedings consistent with this opinion.

### 3. Eighth Amendment Claims

Arauz asserts that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment because he suffered "severe mental psychological and emotional stress, discomfort, depression, confusion, anger, aggravation, [and] pain" which led him to attempt suicide twice and because he was denied access to caps, sunglasses, sweatpants, and sweatshirts, which are "necessary to protect the human body from harm." Compl. at 6. "An Eighth Amendment conditions-of-confinement claim has two elements. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the prison official's state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (internal quotation marks omitted).

9

As to Arauz's claim regarding the denial of clothing, "[w]e have held that the Eighth Amendment may be violated when prison officials provide inadequate clothing to inmates required to go outside in the winter. So, too, may the Eighth Amendment be violated when prison officials let the cold inside, exposing inadequately protected inmates." *Id.* at 728 (citations omitted). We do not have before us facts regarding the conditions Arauz faced and the clothing that was available to him, but reading his complaint liberally, we conclude that he has alleged a non-frivolous claim that he was given insufficient clothing to keep himself warm in the cold weather. Nor can we say that it is legally meritless to argue that the TDOC acted with deliberate indifference in denying Arauz the specified clothing. Accordingly, we hold that the district court erred in dismissing Arauz's Eighth Amendment claims regarding clothing.

The district court dismissed Arauz's claims of mental and emotional anguish on the ground that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Reading Arauz's pleadings liberally, we conclude that Arauz's statements that he attempted to commit suicide satisfy this requirement. By definition, attempting suicide involves hurting oneself, and we can presume the existence of some physical injury from Arauz's statement that he attempted to commit suicide. Given this allegation of physical injury, we **REVERSE** the district court's decision that Arauz's Eighth Amendment claims were frivolous.

### 4. Equal Protection Claims

Arauz asserts that he is a "Spanish inmate" and that TDOC violated his Fourteenth Amendment rights to equal protection by keeping him in administrative segregation "because of his race." Compl. at 6. This circuit has held that "conclusory allegations of unconstitutional conduct" are insufficient to support a claim, but Arauz has made more than conclusory allegations of an equal-protection violation. *Harden-Bey*, 524 F.3d at 796 (internal quotation marks omitted). Arauz's complaint alleges that he was initially placed in administrative segregation because TDOC found that he had been involved in security threat group activity. However, the complaint also asserts that more than a year after these charges were dismissed, TDOC continued to justify his administrative segregation on the basis of the dismissed charges. These circumstances suggest that Arauz was kept in administrative segregation for a reason other than the one offered by TDOC and, along with Arauz's statement that he was segregated because of his race, are sufficient to state 'an arguable basis' to proceed on an equal-protection claim. *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008). Accordingly, we conclude that the district court erred in dismissing Arauz's equal-protection claims as frivolous.

### 5. Due Process Claims

Arauz asserts that TDOC violated his Fourteenth Amendment rights to due process by keeping him in administrative segregation. He argues that the conditions of confinement were very restrictive and that he was kept in administrative segregation indefinitely without the periodic hearings that TDOC policy requires. Ultimately, in order to prevail on his due-process claim, Arauz will have to show that his confinement in administrative segregation constituted "'an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Harden-Bey*, 524

F.3d at 792 (quoting *Sandin*, 515 U.S. at 484). In evaluating Arauz's claim, we consider "the nature of the more-restrictive confinement *and* its duration in relation to prison norms and to the terms of the individual's sentence." *Id.*

Arauz has alleged that he was in administrative segregation from May 2005 to April 2007, nearly two years, and that since his release from administrative segregation, he has been kept in close custody, which is the same as administrative segregation. In his complaint, Arauz details the restrictions that TDOC places on inmates in administrative segregation. In addition to alleging an indefinite and restrictive confinement, Arauz alleges that he was not provided with regular review hearings. Arauz asserts that the review board periodically came by his cell and simply told him that his segregation would be continued. There are documents memorializing these reviews attached to the complaint, but they do not reflect whether a hearing was actually conducted. Given the length of Arauz's confinement in administrative segregation and his allegations that he was not provided with review hearings during this confinement, we hold that the district court erred in dismissing Arauz's due-process claims as frivolous.

## D. Sections 1985(3) and 1986 Claims

"To prevail on a § 1985(3) claim, one must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (internal quotation marks omitted). Additionally, "'[w]here plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986.'" *Id.* at 315 (quoting *Braley v. City of*

12

*Pontiac*, 906 F.2d 220, 227 (6th Cir.1990)).  As discussed above, Arauz asserts an equal-protection

violation based on racial discrimination, but Arauz's complaint does not allege a conspiracy.  Even

construing the pleadings liberally, we can find no suggestion that the defendants conspired to act

against him.  Accordingly, the district court did not err when it dismissed Arauz's § 1985 and § 1986

claims as frivolous.

### III.  CONCLUSION

We **AFFIRM** the district court's dismissal of Arauz's § 1981, § 1985, and § 1986 claims.

We **REVERSE** the district court's dismissal of Arauz's remaining claims and **REMAND** for further

proceedings consistent with this opinion.