*United States*, 510 U.S. 540, 551 (1994), we conclude that his claims of judicial bias lack merit.

### III.

For the foregoing reasons, we **REVERSE** the judgment of the district court dismissing Burton's First Amendment retaliation claim under § 1997e and remand for further proceedings.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0067P (6th Cir.)
File Name: 03a0067p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RONNIE BURTON,
        *Plaintiff-Appellant,*

        *v.*                                     No. 01-1078

WENDEE JONES, et al.,
        *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00923—David W. McKeague, District Judge.

Submitted: September 20, 2002

Decided and Filed: February 28, 2003

Before: KENNEDY and MOORE, Circuit Judges; DOWD,
Senior District Judge.*

_____

**COUNSEL**

**ON BRIEF:** Shannon N. Wood, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS DIVISION,

_____

*The Honorable David D. Dowd, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Lansing, Michigan, for Appellee. Ronnie Burton, Detroit, Michigan, pro se.

_____

**OPINION**

_____

KENNEDY, Circuit Judge. Plaintiff-Appellant Ronnie Burton, a prisoner proceeding *pro se*, appeals the district court's dismissal of his 42 U.S.C. § 1983 civil rights lawsuit for failure to exhaust available administrative remedies as required by 42 U.S.C. § 1997e. Burton argues that the district court erred when it concluded that his entire lawsuit, which alleges two causes of action, had to be dismissed without prejudice because Burton failed to exhaust the available administrative remedies with respect to one of his claims. He contends that he has exhausted his claims. For the reasons set forth below, we **REVERSE** the judgment of the district court and remand for further proceedings.

**I.**

Ronnie Burton is a prisoner at the Ionia Maximum Correctional Facility, in Ionia, Michigan, who suffers from ulcerative colitis. In a complaint filed December 31, 1998, Burton alleged two causes of action against two prison nurses, Wendee Jones and Kathy Sickler, and the Health Unit Manager, Michael Lyons. To his complaint, Burton attached copies of five grievances regarding his allegations, which he contends exhausted both Eighth Amendment and First Amendment claims against the defendants.

On May 11, 1999, defendants filed a motion for summary judgment of Burton's claims. In its March 8, 2000 opinion, the district court found that the facts set forth in Burton's complaint presented two Eighth Amendment claims (one arising from deliberate medical indifference to his ulcerative colitis and the other arising from deliberate medical indifference to his chronic dry skin condition), a Fourteenth Amendment due process claim (arising from an unwarranted

grievances satisfy § 1997e in respect to each of the defendants because Burton gave prison officials fair notice of Burton's retaliation claim against the defendants when Burton associated the defendants with the alleged misconduct in Step I of the grievances.

We also find that ICF 1624, which alleges deliberate indifference on the part of Nurse Jones and ICF 2104, which alleges deliberate indifference on the part of Nurse Jones, Nurse Sickler and Health Unit Manager Lyons, gave prison officials fair notice of Burton's retaliation claim and, therefore, exhausted that claim against the defendants. The legal elements of an Eighth Amendment deliberate indifference claim include proof of a defendant's sufficiently culpable state of mind, which may include proof of motive. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). If a defendant's motive is rooted in unconstitutional conduct, such as punishing or threatening a prisoner for exercising his First Amendment rights, the prisoner may also state a retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). When Burton alleged deliberate indifference on the part of Nurse Jones in ICF 1624 and deliberate indifference on the part of all the defendants in ICF 2104, he gave prison officials fair notice that the motive underlying the defendants' conduct was at issue. As a result, these grievances also exhausted Burton's retaliation claim against the defendants.

Because we have concluded that district court erred when it determined that Burton had not administratively exhausted his First Amendment retaliation claim against the defendants, we do not need to reach the question of whether the district court erred when it dismissed Burton's entire lawsuit because Burton failed to exhaust the available administrative remedies with respect to one of his claims.

**B.**

Burton also accuses the district court and the magistrate judge of bad conduct and bias against him. Because he does not allege anything close to a "predisposition ... so extreme as to display clear inability to render fair judgment," *Liteky v.*

tube back.  In ICF 98-07-02104-28 (dated July 20, 1998) (hereinafter ICF 2104), Burton repeated the facts alleged in ICF 1819 (that Nurse Jones had been deliberately indifferent to health care requests and imposed an unwarranted co-payment charge in retaliation for Burton filing a previous lawsuit against her).  The grievance ended with the allegation that Nurse Jones, Nurse Sickler, and Health Unit Manager Lyons had interfered with the processing of his initial grievance regarding the $3.00 co-payment to cover up their "lies" regarding Burton's medical treatment and charges, and to retaliate for Burton filing a previous lawsuit against them.

Based on our review of Burton's grievances, we must agree with Burton's contention that the district court erred when it found that he failed to administratively exhaust his First Amendment claim against the defendants.[7]  Step I of ICF 1819 plainly alleges that Nurse Jones was deliberately indifferent to a series of Burton's health care requests and then improperly charged him for the health care visit he did receive because Burton had filed a previous lawsuit against her. Similarly, Step I of ICF 1838 plainly alleges that Nurse Sickler did not return Burton's hospital records and petroleum jelly because Burton had filed a previous lawsuit against her.[8] And finally, Step I of ICF 2104 plainly alleges that Nurse Jones, Nurse Sickler and Health Unit Manager Lyons interfered with the processing of ICF 1819 to cover up "lies" regarding their deliberate indifference to Burton's chronic ulcerative colitis and did so because Burton had filed a previous lawsuit against them.  Thus, these exhausted

---

[7]Defendants have not appealed the district court's conclusion that Burton exhausted his Eighth Amendment claim with respect to each of the defendants and, based on our review of Burton's grievances, we agree that Burton did administratively exhaust that claim.

[8]In considering a prisoner's claims, a district court should first determine whether the claim has been exhausted and then consider whether a prisoner has stated an actionable claim.  § 1997e(a), (c).  We have concluded that Burton has presented an exhausted retaliation claim against Nurse Sickler.  We leave it to the district court to determine whether Burton has presented an actionable claim.

medical co-payment charge) and a Freedom of Information Act (FOIA) claim (arising from the denial of a records request).  The court also considered whether Burton's complaint presented additional claims against the defendants based on Burton's allegations that his hospital records were improperly confiscated and that the defendants interfered with the processing of his grievances.

The district court denied defendants' summary judgment motion in part and granted it in part.  The district court denied the motion as to Burton's Eighth Amendment claim arising from defendants' alleged deliberate indifference to his ulcerative colitis.  The court granted the motion as to Burton's Eighth Amendment claim arising from defendants' alleged deliberate indifference to his chronic dry skin condition because his complaint stated a claim against non-defendants; his Fourteenth Amendment due process claim arising from the unwarranted co-payment charge because his complaint failed to state a claim; and, his FOIA claim arising from the denied records request because his complaint stated a claim against non-defendants.  The court also granted summary judgment in favor of the defendants on the hospital records claim because the records were not confiscated by the defendants and the grievance interference claim because Burton had failed to provide factual support for that allegation.  Last, the court noted that it had not addressed Burton's retaliation claim because it was not included in defendants' summary judgment motion.

Defendants subsequently filed a motion to dismiss Burton's retaliation claim under Federal Rule of Civil Procedure 12(b)(6) and 42 U.S.C. § 1997e.  Section 1997e, as amended by the Prison Litigation Reform Act of 1995 (PLRA), requires a prisoner to exhaust available administrative remedies as a prerequisite to bringing suit under §1983 or any other federal law.  Amended § 1997e provides in pertinent part:

(a) Application of administrative remedies.

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

. . . .

(c) Dismissal.

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

42 U.S.C.A. § 1997e (2002 Supp.).

On September 26, 2000, the district court granted defendants' motion because Burton had failed to exhaust the available administrative remedies with respect to his retaliation claim as required by §1997e(a) when he failed to file a grievance regarding defendants' alleged retaliatory conduct. The court observed that while the grievance identified as ICF 98-07-02104-28 made a vague reference to Burton's previous lawsuit against the defendants, the grievance did not set forth the factual basis for the claim that the defendants' actions were in retaliation for the lawsuit Burton had filed against them.[1] Rather, the court found that the grievance set forth the factual basis for Burton's claim that

---

[1]The earlier lawsuit referenced in Burton's complaint and grievances was filed against Nurse Sickler, Nurse Jones and Health Unit Manager Lyons, and was decided in their favor on January 19, 1999. *Burton v. Sickler*, No. 1:97-CV-975 (W.D. Mich.). That decision was affirmed on December 19, 1999. *Burton v. Sickler*, 202 F.3d 267 (6th Cir. 1999) (unpublished).

---

dated June 8, 1998) (hereinafter ICF 1624), Burton alleged that Nurse Jones deliberately denied him medical treatment for his ulcerative colitis by failing to administer a series of physician ordered tests and that Nurse Jones always delays giving Burton medical treatments and medication. The grievance closed with the allegations that legal papers had been taken off Burton's desk and that Nurse Jones and Nurse Sickler "are full of corruption."[5] Burton's Step II reasons for appeal further explain that he suspects that Nurse Sickler's "corruption" in respect to her treatment of him is because he filed a previous lawsuit against her. In ICF 98-06-01819-12 (dated June 24, 1998) (hereinafter ICF 1819), Burton objected to a $3.00 medical co-payment charge. That grievance alleged that Nurse Jones imposed the co-payment and failed to respond to Burton's written health care requests because Burton had filed a previous lawsuit against her. Burton's Step II reasons for appeal further explain that Nurse Jones was aware of the severity of his illness when she imposed the unwarranted co-payment and failed to respond to his health care requests.[6] In ICF 98-07-01838-12 (dated June 26, 1998) (hereinafter ICF 1838), Burton began by accusing prison medical staff, and specifically Nurse Sickler, of corruption because Burton had filed a lawsuit against Sickler. Burton went on to allege that prison officials wrongfully confiscated his medical records and a tube of petroleum jelly upon his return to prison from an outside hospital and identified Nurse Sickler as the prison official who informed Burton that he would not be getting his hospital records or petroleum jelly

---

misconduct, including a violation of the grievance procedures, is made at Step II or Step III of the grievance process. Therefore, this grievance does not administratively exhaust a retaliation claim against Nurse Sickler.

[5]Again, Nurse Sickler was the Step I respondent to this grievance, and allegations of retaliatory conduct on her part are first raised in Burton's Step II reasons for appeal. For the reason stated in footnote four, this grievance does not administratively exhaust a retaliation claim against Nurse Sickler.

[6]This grievance resulted in the cancellation of the co-payment charge.

534 U.S. 516, 524 (2002). Administrative exhaustion reduces the quantity of prisoner suits by giving state officials an opportunity to take corrective action in response to prisoner grievances and, thereby, eliminates the need for some claims to be litigated, particularly frivolous claims. *Id*. at 525. Administrative exhaustion improves the quality of prisoner suits by facilitating the development of "an administrative record that clarifies the contours of the controversy" in advance of litigation. *Id*. A fair notice standard continues to give state prison officials first opportunity to respond to a prisoner's allegations of mistreatment or misconduct. If a district court determines that prison officials have not been given fair notice of the claim being litigated against a defendant, the court will dismiss the claim against that defendant for failure to exhaust. Because a prisoner's allegations of mistreatment and misconduct will be reviewed and acted upon first by prison officials, the district courts also will continue to receive the benefit of an administrative record that clarifies the controversy. Accordingly, the legislative purposes of § 1997e, as articulated in *Porter*, will not be impaired.

The following restates the primary allegations Burton set forth in the five grievances attached to his complaint, which he contends administratively exhausted his claims against the defendants.[3] In ICF 98-06-01623-12 (dated June 8, 1998) (hereinafter ICF 1623), Burton alleged that Nurse Gardner and Officer Goodrich, neither of whom are parties to this case, made racially derogatory remarks and conspired to deny Burton medical treatment.[4] In ICF 98-06-01624-12 (also

[3] We have principally relied on Burton's Step I problem statements for our restatement of his primary allegations. Burton's Step II and Step III reasons for appeal provided a secondary source to the extent that the stated reasons clarified a fact alleged at Step I.

[4] Nurse Sickler was the Step I respondent to this grievance. Allegations of retaliatory conduct on the part of Nurse Sickler are first raised in Burton's Step II reasons for appeal. As stated above, we read the MDOC grievance procedures to preclude administrative exhaustion of a claim against a prison official if the first allegation of an official's

he had been improperly charged a medical co-payment in violation of the Fourteenth Amendment Due Process Clause. Consequently, the court concluded that Burton's lawsuit, including his exhausted Eighth Amendment medical indifference claim, had to be dismissed without prejudice. On January 8, 2001, Burton filed a timely notice of appeal.

## II.

### A.

We review *de novo* a district court's dismissal for failure to exhaust administrative remedies under § 1997e. *Curry v. Scott*, 249 F.3d 493, 503 (6th Cir. 2001). Before we can consider whether Burton administratively exhausted his claims, we must first determine what claims are advanced in Burton's complaint. A handwritten pro se complaint should be liberally construed. ("All pleadings shall be so construed as to do substantial justice."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also* F.R.Civ.P. 8(f) *Huey v. Stine*, 230 F.3d 226, 229 (6th Cir. 2000) (examining "thrust," not just text, of pro se litigant's arguments).

Burton's first cause of action alleges "deliberate[] indifference … to plaintiff['s] serious medical needs … in violation of the 8th Amendment." His second cause of action alleges that the defendants "den[ied] plaintiff medical treatment … to force plaintiff to drop civil action on them … in violation [of the] 8th Amendment … substantial [sic] due process clause, prisoner equal-protection, and retaliation." Burton's complaint is properly construed as stating an Eighth Amendment deliberate indifference claim as the first cause of action and a First Amendment retaliation claim as the second cause of action. So construing the second cause of action is substantially just because the complaint clearly indicates Burton's intent to proceed on a theory of unconstitutional retaliation, which is actionable under the First Amendment, and because neither the Eighth Amendment nor the Fourteenth Amendment Due Process and Equal Protection Clauses provide a legal theory on which Burton can proceed.

Next, we consider whether Burton's grievances administratively exhausted his claims against the defendants as required by §1997e. Our exhaustion analysis is informed by the Michigan Department of Corrections (MDOC) grievance policies and procedures, as well as circuit caselaw interpreting the requirements of §1997e. First, the Michigan Department of Corrections requires a prisoner to define the grievable issue at Step I of the grievance process. Policy Directive 03.02.130 ¶ U (Oct. 11, 1999); Prisoner/Parolee Grievance Form (4835-4247 10/94). Steps II and III of the grievance process provide a prisoner the opportunity to express dissatisfaction with the response received at the previous step. Policy Directive 03.02.130 ¶¶ T, DD, GG, (Oct. 11, 1999); Prisoner/Parolee Grievance Form (4835-4248 10/94). We understand these policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process. By negative implication, we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process. *See* Policy Directive 03.02.130 ¶ E (Oct. 11, 1999) (an alleged violation of this policy directive is a grievable issue that should be raised at Step I, not a reason for appeal at Step II or III). We do not, however, understand these policies to preclude a prisoner from presenting additional factual detail at Step II and Step III that clarifies an allegation made at Step I as a means of justifying an appeal.

Second, a prisoner must administratively exhaust his or her claim as to each defendant associated with the claim, *Hartsfield v. Vidor,* 199 F.3d 305, 309 (6th Cir. 1999),[2] and

_____

[2]In that case, Hartsfield, a prisoner proceeding *pro se*, filed suit against defendants Vidor, Mowatt, Crump, Kavanaugh, and Breimayer claiming that their actions were cruel and unusual in violation of the Eighth Amendment when they denied him access to a toilet and fresh water for eighteen hours. *Id.* at 307. He also claimed that defendants Vidor and Mowatt violated the Due Process Clause of the Fourteenth

a district court should enforce the exhaustion requirement *sua sponte*, if not raised by the defendants, *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). Thus, for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process. In describing the alleged mistreatment or misconduct, however, we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint. *Cf. Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (holding that when state grievance rules do not prescribe the contents of a grievance or the necessary degree of factual particularity, a grievant need only "object intelligibly to some asserted shortcoming" and need not "lay out facts, articulate legal theories, or demand particular relief").

A fair notice standard for determining administrative exhaustion does not disturb the policies advanced by amended § 1997e. Congress amended § 1997e to reduce the quantity and improve the quality of prisoner lawsuits. *Porter v. Nussle*,

_____

Amendment when they placed him in bed restraints without a hearing and that they violated the Equal Protection Clause of the Fourteenth Amendment because they intentionally discriminated against him by using hard restraints on him, while using soft restraints on a white prisoner. *Id.* at 306. Applying §1997e, this Court affirmed the dismissal of Hartsfield's claims against defendants Vidor and Mowatt because the record indicated that Hartsfield had failed to administratively exhaust his remedies as to those defendants. This Court then affirmed the district court's decision on the merits of Hartsfield's Eighth Amendment claim against the remaining three defendants. *Id.* at 309. Thus, the *Hartsfield* holding illustrates that a prisoner's lawsuit, which alleges multiple claims against multiple defendants, is not vulnerable to dismissal under § 1997e(a) simply because the prisoner has failed to exhaust a particular claim as to a specific defendant.