NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0515n.06
Filed: June 17, 2005

No. 03-2458

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| JOHN H. WALTON, )<br><br>　　Plaintiff-Appellant, )<br><br>v. )<br><br>BARBARA BOUCHARD, KEN GEARIN, D. )<br>BERGH, CATHERINE BAUMAN, and )<br>DENISE GERTH, )<br><br>　　Defendants-Appellees. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |

Before: GIBBONS and SUTTON, Circuit Judges; EDGAR, District Judge.[*]

SUTTON, Circuit Judge. John Walton, an inmate at the Alger Maximum Correctional Facility in Munising, Michigan, filed this § 1983 action claiming racial discrimination by several prison employees. The district court granted the employees' motions to dismiss on procedural, not substantive, grounds, determining that Walton did not exhaust his administrative remedies as to each defendant named in the suit in accordance with 42 U.S.C. § 1997e(a). On the basis of § 1997e(a) and this court's recent decision in *Jones Bey v. Johnson*, 407 F.3d 801(6th Cir. 2005), we affirm.

---

[*]The Honorable Robert Allan Edgar, Chief United States District Court Judge for the Eastern District of Tennessee, sitting by designation.

I.

On July 17, 2001, the prison punished Walton for assaulting a prison officer by giving him a sanction referred to as an "upper slot restriction" for an indefinite period of time. Nearly a year later, in early April 2002, Walton, an African American, filed a prison grievance charging Assistant Deputy Warden (ADW) Ron Bobo with racial discrimination for giving him the indefinite upper slot restriction. Walton claims that while white prisoners were given definite upper slot restrictions (30 or 60 days at most) for similar assaults, he was given an indefinite restriction. In support of his claim, he identified a white prisoner who had received a definite upper slot restriction for a similar infraction. In Step I of the prison's grievance process, he charged only Bobo with responsibility for the incident. The prison responded to his grievance by stating that ADW Ken Gearin had placed Walton on an indefinite upper slot restriction and that racial discrimination had nothing to do with Gearin's decision. Such restrictions, the prison explained, are imposed individually and one prisoner's restriction does not affect the discipline that another prisoner receives.

Walton appealed his claim to Step II of the grievance process, restating his allegations from Step I and claiming racial discrimination on the part of "corrupt administration[] heads, warden, et[] al[.]" Prisoner Grievance Appeal Form at Step II (contained in Walton Reply Br. at 14). The prison responded that Walton had failed to present any new evidence at Step II and that its Step I response adequately addressed Walton's allegations.

Walton appealed to Step III of the grievance process, the final level of appeal. In addition to restating his earlier allegations, he identified an additional white prisoner who was given a definite upper slot restriction for misconduct that allegedly paralleled Walton's misconduct. The

prison denied the Step III appeal, stating that the responses in Steps I and II adequately addressed Walton's concerns.

Having obtained no relief in the grievance process, Walton filed this action under § 1983 and the Fourteenth Amendment against Warden Barbara Bouchard, ADW Gearin, ADW Bergh, prison employee Cathy Bauman, case manager Denise Gerth and ADW Bobo. In his request for relief, he asked the court to order the defendants to remove the upper slot restriction and to order each of the defendants to pay him up to $750,000 in compensatory and punitive damages.

At the time Walton filed this complaint, several district courts within this circuit had reached different conclusions about whether the Prison Litigation Reform Act (PLRA), *see* 42 U.S.C. § 1997e(a), required the dismissal of a prisoner's complaint if it contained both exhausted and unexhausted claims. The district court in this case sided with the total-exhaustion school of thought and dismissed Walton's complaint without prejudice for his failure to exhaust administrative remedies against each named defendant. Guided by our recent decision in *Jones Bey*, we now follow the same path and affirm.

## II.

We give fresh review to a district court's dismissal of an action for failure to exhaust administrative remedies. *Curry v. Scott*, 249 F.3d 493, 503 (6th Cir. 2001). Exhaustion of administrative remedies is mandatory, we have said, "even if proceeding through the administrative system would be futile," *Jones Bey*, 407 F.3d at 805 (quotations and citation omitted), and even if the defendant does not raise the defense, *see Burton v. Jones*, 321 F.3d 569, 574–75 (6th Cir. 2003) (noting that a district court should "enforce the exhaustion requirement *sua sponte*, if not raised by

the defendants"). The inmate bears the burden of establishing that he has exhausted his administrative remedies. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998).

Under the PLRA, "[n]o *action* shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). In view of the exhaustion provision's reference to "action" and the PLRA's other reference to "claim," 42 U.S.C. § 1997e(c)(2), another panel of this court recently interpreted § 1997e(a) to "require[] a complete dismissal of a prisoner's complaint when that prisoner alleges both exhausted and unexhausted claims." *Jones Bey*, 407 F.3d at 805.

We also have previously held that a prisoner must "file a grievance against the person he ultimately seeks to sue." *Curry*, 249 F.3d at 505. Such a requirement is consistent with the aims of the PLRA as it gives the prison administrative system "a chance to deal with claims against prison personnel before those complaints reach federal court." *Id.* And not only must the prisoner file a grievance with regard to each defendant, he "must administratively exhaust his . . . claim as to each defendant associated with the claim." *Burton*, 321 F.3d at 574. In order to exhaust "a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the [Michigan Department of Corrections] grievance process." *Id.* at 575. *See id.* at 574 ("By negative implication, we understand these [Michigan] policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process.").

Walton has not satisfied these requirements. He named only ADW Bobo in Step I of his grievance process, and under our precedent that is the only claim that we may consider exhausted. *See id.*; *see also Curry*, 249 F.3d at 505. His claims as to all other defendants remain unexhausted and accordingly the district court properly dismissed the entire complaint under *Jones Bey*'s total-exhaustion requirement.

In his pro se brief on appeal, Walton argues that by mentioning "corrupt administration[] heads, warden, et[] al[.]" during the grievance process, he gave any unnamed party notice of the allegations because the prison at that point could have determined which prison employees were involved in the incident. But Walton's reference to "corrupt administration[] heads, warden, et[] al[.]" came at Step II of the process, not Step I—the step at which a prisoner generally must name each defendant. *Burton*, 321 F.3d at 575. And in response to his Step I grievance, the prison gave Walton all of the information that he needed to comply with this requirement. Far from leaving Walton in the dark as to which prison officials were responsible for his alleged mistreatment, the prison told him that ADW Gearin gave him the upper slot restriction. At that point, Walton was armed with all of the information that he needed to file a Step I grievance against ADW Gearin—and a federal complaint against Gearin once the claim had been exhausted—but he simply chose not to follow this route. Even if we took the view, moreover, that the prison's acknowledgment that ADW Gearin was responsible for Walton's upper slot restriction establishes that Walton adequately exhausted his claim against Gearin, it would not establish that Walton exhausted his claims against the other defendants by identifying them by name or position in Step I of the grievance process.

## III.

For these reasons, we affirm the district court's dismissal of Walton's complaint without prejudice.