*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD JORDAN,

        Plaintiff-Appellant,

v

DENNIS L. KENDALL,

        Defendant-Appellee.

UNPUBLISHED
November 2, 2023

No. 365270
Court of Claims
LC No. 22-000140-MZ

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Plaintiff Ronald Jordan appeals as of right the order of the Court of Claims granting summary disposition in favor of defendant Dennis L. Kendall. We affirm.[1]

## I. BACKGROUND

This case originates with Michigan Department of Corrections (MDOC) personnel confiscating personal property from Jordan. Relevant here, the property included a bottle of Gorilla Glue[2] and a pair of sheepskin mittens. It appears that the confiscation of the various items belonging to Jordan occurred when Jordan was transferred from one MDOC facility to another. Jordan was previously held at "LRF," also known as the Earnest C. Brooks Correctional Facility in Muskegon County, but then transferred to "ARF," also known as the Gus Harrison Correctional Facility in Lenawee County. Jordan appears to have arrived at ARF in early June 2021, and,

---

[1] We note that Jordan failed to comply with the disclosure requirements in MCL 600.5507. See MCL 600.5507(2). Though in the trial court he disclosed the number of civil actions and appeals he has previously filed, he did not disclose that number when he commenced this appeal. His appeal is therefore subject to dismissal. See *Tomzek v Dep't of Corrections*, 258 Mich App 222, 224-225; 672 NW2d 511 (2003); MCL 600.5507(3)(b). Nevertheless, we address Jordan's claims on appeal.

[2] Jordan appears to have originally purchased two bottles of Gorilla Glue while incarcerated at LRF, but came to ARF with only one bottle.

relevant to this appeal, it is where prison staff confiscated the personal property at issue in this case.

MDOC has several policies related to prisoner personal property and hobbycraft materials. Relevant here are MDOC policy directive (PD) 04.07.112 and PD 05.03.102. PD 04.07.112 governs prisoner personal property and, relevant here, relates to Jordan's mittens. PD 04.07.112 states, in relevant part:

> L. Except if authorized pursuant to Paragraph M, the following kinds of clothing are prohibited:
>
> * * *
>
> 10. Winter gloves/mittens except if single-layered construction and either knit or cloth construction. Suede, leather, and similar artificial materials are prohibited.
>
> M. Prisoners shall be permitted to possess and wear personal winter coats, winter jackets, winter gloves, and winter mittens that were legitimately in their possession prior to January 12, 1998 provided they fit within allowable property limits, even if they are not machine washable or do not meet the requirements set forth in Paragraph L, numbers 1, 4, and 9, and the attachments to this policy. New personal winter coats or winter jackets and new personal winter gloves or winter mittens may be ordered only through established institutional ordering procedures and must comply with all requirements set forth in this policy. A prisoner may only have one personal winter coat or winter jacket and one pair of personal winter gloves or winter mittens in their possession at any time. [PD 04.07.112(L)(10) and (M).]

MDOC PD 05.03.102 governs the hobbycraft program within correctional facilities. According to PD 05.03.102(C), hobbycraft materials, supplies, and projects are "subject to prisoner property limits set forth in" PD 04.07.112. Relevant here, PD 05.03.102 also states:

> N. Hobbycraft materials and supplies are subject to cost limitations set forth in PD 04.07.112 "Prisoner Personal Property". They also are subject to the following restrictions:
>
> * * *
>
> 6. Liquids and gels, including all paints, must be water-based.

The Gorilla Glue and mittens were confiscated separately and proceeded separately through the prison grievance process. Though some of the critical events overlap, for clarity's sake, we separate the administrative background related to each item.

## A. TIMELINE OF EVENTS RELATED TO THE GORILLA GLUE

When Jordan arrived at ARF in early June 2021, a prison employee identified as "T. Skelton" confiscated Gorilla Glue from Jordan. Skelton found that the Gorilla Glue was "not water based" nor "non-toxic," and noted that the bottle's label identified it as "an eye and skin irritant" and waterproof. Skelton believed it should be "handled as contraband per PD 04.07.112[.]" In mid-July 2021, Kendall held an administrative hearing related to the Gorilla Glue. At the hearing, Jordan stated he was "authorized to order[]" the glue at his previous facility. Kendall noted that Jordan had a receipt for the glue, but found that although he was "allowed to order this product[,] it [did] not meet the criteria" under PD 05.03.102(N)(6). Kendall found that the glue was contraband, concluding that the glue was "not water based" and noting the warning label that the glue was an eye and skin irritant. He indicated in his report that Jordan could either send the glue home "at his expense" or have it destroyed under prison policy.

A day after the administrative hearing, Jordan filed a Step I appeal of Kendall's decision, asserting that the glue was not contraband because he was previously authorized to purchase and possess the glue as a hobbycraft item. In early August 2021, two individuals identified as J. Lundy and A. Thomas upheld Kendall's decision, noting that although Jordan was authorized to purchase the glue at LRF, this was a violation of prison policy and, regardless, Jordan was "no longer at LRF . . . ." Lundy and Thomas concluded the glue was contraband under the policy directives because it was not water-based.

In mid-August 2021, Jordan filed a Step II appeal, claiming that because the Step I decision "admit[ted]" that he had authorization to purchase and possess the glue it did not meet the definition of contraband. Shortly after Jordan filed the appeal, the warden of ARF, "S. Campbell," reviewed it and determined that Thomas and Lundy properly addressed the issue, concluding that the glue was not permitted by prison policy because it was not water-based.

In late August 2021, Jordan filed a Step III appeal, reiterating his position that, under prison policy, a prisoner could "possess any item(s) authorized by staff" and he "had staff authorization." In late October 2021, Richard D. Russell, manager of the Grievance Section of the Office of Legal Affairs within the MDOC, denied Jordan's Step III appeal, determining that his claims were "considered, investigated, and a proper decision was rendered."

## B. TIMELINE OF EVENTS RELATED TO MITTENS

A few days after Skelton confiscated Jordan's glue, MDOC Officer Baldwin conducted a "ride in property"[3] for Jordan and found several items that he identified as contraband. Relevant here, this included a "pair of brown suede mittens not allowed," i.e., the sheepskin mittens. The same day these items were confiscated, Jordan wrote a letter to Baldwin identifying the items Baldwin withheld as including the "Brown Gloves." Jordan requested return of the items, "or an explanation for withholding."

In early July 2021, Kendall held a hearing relating, in part, to the mittens. Jordan "was present for this hearing" and indicated he had " 'receipts for these things.' " In his findings,

---

[3] "Ride in property" is a reference to a property check and release of property upon arrival at a new institution, either from jail or another MDOC facility.

Kendall cited PD 04.07.112(L)(10), the policy directive prohibiting leather or suede gloves or mittens, and identified the gloves at issue as "suede," indicating they were "sent home[.]"

Jordan filed a Step I appeal of Kendall's decision in mid-July 2021, contending that his mittens were not suede and explaining they were "[s]heepskin with fur inside; suede does not have fur on one side of [s]heepskin." He argued that prison policy allowed him to "possess 'Winter gloves/mittens' " and that Kendall's refusal to return the mittens violated policy. Jordan also claimed that Kendall admitted at the hearing that the mittens were sheepskin. In late July 2021, an MDOC employee identified only as "Condon" interviewed Jordan. Condon found that Jordan failed to provide evidence supporting a violation of prison policy with respect to the mittens.

Jordan then filed a Step II appeal in early August 2021, arguing that Condon's decision was "clearly erroneous because [the] grievance makes [an] unrefuted claim" that prison policy (PD 04.07.112(L)(10)) authorized prisoners to possess winter gloves and mittens. Campbell, the ARF warden, denied Jordan's Step II appeal. He concluded that the "grievance was appropriately addressed at Step I," concluding that PD 04.07.112 prohibited winter gloves or mittens "made of suede, leather, and similar artificial material" and found that "[s]heepskin is leather."

In mid-August 2021, Jordan filed his Step III appeal with the MDOC. He explained the basis for his appeal as follows: "Kendall violated policy because item *NOT* contraband." Russell (the manager of the Grievance Section of the MDOC's Office of Legal Affairs) denied Jordan's Step III appeal, concluding that, after review, the issues were "considered, investigated, and a proper decision was rendered." This decision was mailed to Jordan in late October 2021. Notably, aside from referencing having receipts for the items seized in his administrative hearing, Jordan did not raise the argument that he purchased the mittens prior to 1998 at Step I, II, or III of the administrative grievance process.

## C. PROCEDURAL HISTORY IN CIRCUIT COURT AND COURT OF CLAIMS

In mid-May 2022, Jordan sued Kendall in Lenawee Circuit Court, raising claim-and-delivery claims related to the sheepskin mittens and Gorilla Glue. He alleged that he was suing Kendall "in his individual capacity." Jordan further alleged that, under MCL 600.5507(2), he had "previously filed 257 civil actions or appeals" and that he had "exhausted all administrative remedies by filing an administrative grievance through all three steps." Regarding the claim-and-delivery claims, Jordan alleged that Kendall had "no lawful right to refuse [to] return" the mittens and glue that Jordan "legitimately owned and possessed" and that Kendall's "taking and retention of [those] items" was unlawful. He alleged that he had a "legal right to [the] continued possession" of his mittens and glue and that Kendall "undermined [that right] by refusing return of [Jordan's] property items." Jordan sought return of the mittens and glue or $71.53 in compensatory damages, $500 in punitive and exemplary damages, and costs for litigation.[4]

---

[4] In early July 2021 Kendall moved for summary disposition in the circuit court. This motion and Jordan's response to it are essentially identical to their respective filings in the Court of Claims. Because this appeal relates to the arguments in and decision of the Court of Claims, we do not

In late September 2022, Kendall filed a notice of transfer, transferring the case to the Court of Claims because Jordan sought "monetary and injunctive relief against a state employee" and the case was "within the jurisdiction of the Court of Claims as provided by 2013 PA 164, at MCL 600.6419(1) and (7)." In late October 2022, Jordan moved to dismiss the case from the Court of Claims and for it to remand to the Lenawee Circuit Court. He argued that the Court of Claims lacked jurisdiction over the case because it could only hear cases against the state and its officers, but Kendall, as a prison counselor, was not an officer. Jordan based this argument on several cases from the 1980s and an unpublished opinion from 1997, an important point for this appeal because the Legislature amended the Court of Claims Act in 2013, and, in doing so, expanded the jurisdiction of the Court of Claims. He also cited *Council of Orgs & Others for Ed About Parochiaid v Michigan*, 321 Mich App 456; 909 NW2d 449 (2017), to support his argument that the Court of Claims lacked jurisdiction over claims against persons sued in their individual capacities, like Kendall here.

In late October 2022, Kendall moved for summary disposition in the Court of Claims. Kendall first argued that Jordan could not possess the mittens or glue because they were prohibited by prison policy directives. He argued that although prisoners may be exempt from the leather prohibition if they legitimately possessed the item before January 12, 1998, Jordan failed to raise this claim during the grievance process. Regarding the Gorilla Glue, Kendall asserted that although the policy directives allowed items for "hobbycraft programs," liquids and gels had to be water based, so Jordan's non-water-based glue was prohibited.

Kendall also argued that summary disposition was appropriate because Jordan failed to exhaust his administrative remedies with respect to his claim that he purchased the mittens at issue before 1998. Kendall noted that Jordan's "grievance affidavit" indicated the basis for his complaint was that his mittens were "not suede but were sheepskin." That is, Kendall asserted that Jordan had not raised his claim that he purchased the mittens before 1998 and did not provide proof of legitimate ownership. Kendall also argued that governmental immunity precluded Jordan's claim for money damages because he performed a governmental function when addressing Jordan's grievance, and that Jordan failed to plead in avoidance of immunity.

Kendall also responded to Jordan's motion to dismiss the same day he moved for summary disposition. He noted that Jordan relied on outdated and unpublished caselaw to support his argument that the Court of Claims lacked jurisdiction, noting the Legislature's 2013 amendment of the Court of Claims Act. Kendall also distinguished *Council of Orgs*, arguing that Jordan's case did not involve intervention and that Jordan's discussion of individual capacity relied on outdated dicta from *Council of Orgs*. He further argued that he acted in an official capacity when conducting

---

rehash the arguments in the parties' circuit court filings. We note, however, that Jordan moved for leave to file an amended complaint. He sought to add a gross-negligence claim to avoid immunity, in response to a claim in Kendall's dispositive motion.

the hearing related to Jordan's personal property. Finally, Kendall argued that Jordan had "not properly disclosed his litigation history," contrary to MCL 600.5507.[5]

In mid-November 2022, Jordan responded to Kendall's motion for summary disposition, asking the Court of Claims to deny the motion. He asserted he had a right to continued possession of the mittens and Gorilla Glue. Referencing his affidavit attached to his response, Jordan asserted that an "authorized prison official" issued him the Gorilla Glue and that, under PD 04.07.112, he could possess the glue as a hobbycraft item. He argued that the authorization "negate[d] any claim the Glue was prohibited 'contraband,' " but, "[a]t the very least," it created a factual dispute sufficient to preclude summary disposition.

Jordan also contended that he fully exhausted all of his administrative remedies. Jordan asserted that the Federal Prison Litigation Reform Act, 42 USC 1997e *et seq.*, which Kendall cited in his motion for summary disposition, was inapplicable and that only the Michigan Prison Litigation Reform Act (PLRA), MCL 600.5501 *et seq.*, applied. Noting that he had to "exhaust all three steps of the prison grievance procedure," Jordan asserted that he "presented his claim in the grievance which was reviewed at all levels and denied." Jordan contended that he informed Kendall that he had possessed the mittens since 1996, but that Kendall "elected to ignore and exclude this important fact from the hearing report" he prepared. Finally, Jordan asserted that Kendall was not entitled to governmental immunity because his conduct was grossly negligent.

In mid-January 2023, the Court of Claims entered an order granting Kendall's motion for summary disposition under MCR 2.116(C)(8). The Court of Claims, noting that the MDOC had statutory authority to limit personal property of prisoners, concluded that Jordan did not have a right to possess the mittens and Gorilla Glue. It found that PD 04.07.112(M) prohibited prisoner possession of "gloves like the ones taken from [Jordan]." The Court of Claims also found that the Gorilla Glue was "properly considered contraband" under PD 05.03.102(N)(6) because it was a non-water-based liquid. Because it found that Jordan did not have a right to possess the mittens and glue, the Court of Claims "order[ed] that [Jordan] has failed to state a claim upon which relief can be granted and [his] request to amend the complaint would be futile." The Court of Claims therefore dismissed Jordan's case.

In early February 2023, Jordan moved for reconsideration of the January 2023 order, which the Court of Claims denied. He argued that the Court of Claims lacked jurisdiction over his case for the same reasons articulated in his motion to dismiss, namely because Kendall was not an officer of the state acting in an official position, as required to vest jurisdiction with the Court of Claims. He also argued that the Court of Claims improperly granted summary disposition under MCR 2.116(C)(8) because it made findings of fact and should not have relied on documentary evidence attached to Kendall's dispositive motion. The Court of Claims denied reconsideration. This appeal followed.

---

[5] MCL 600.5507(2) provides: "A prisoner who brings a civil action or appeals a judgment concerning prison conditions shall, upon commencement of the action or initiation of the appeal, disclose the number of civil actions and appeals that the prisoner has previously initiated."

## II. STANDARDS OF REVIEW

"Whether the trial court had subject-matter jurisdiction is a question of law that this Court reviews de novo." *Council of Orgs*, 321 Mich App at 463 (quotation marks and citation omitted). "Where a court lacks jurisdiction over the subject matter of a suit, any action with respect to such a cause, other than dismissal, is absolutely void." *Id*. at 466 (quotation marks and citation omitted).

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. at 159 (emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. COURT OF CLAIMS JURISDICTION

Jordan argues that the Court of Claims only has jurisdiction over cases involving officers of the state and that Kendall, as a "prison counselor," did not constitute an officer. He therefore argues that the Court of Claims lacked jurisdiction over his case and should have remanded it back to Lenawee Circuit Court. We disagree.

Under the current version of MCL 600.6419(1)(a), the Court of Claims has jurisdiction

[t]o hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court.

MCL 600.6419(7) defines "the state or any of its departments or officers" as:

[T]his state or any state governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of the state, or an officer, employee, or volunteer of this state or any governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of this state, acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties.

In other words, an employee of this state who acts (or reasonably believes they are acting) within the scope of their authority while engaged in or discharging a governmental function in the course of their duties constitutes "the state or any of its departments or officers" under MCL 600.6419(7), and the Court of Claims has jurisdiction over claims against that employee under MCL 600.6419(1)(a).

Though the Court of Claims did not address this argument, it had jurisdiction over this case because Kendall is an employee of a state department. ARF, a state prison facility, is part of the MDOC. Kendall is an ARF prison counselor who was designated to conduct administrative hearings related to Jordan's Gorilla Glue and sheepskin mittens. He is therefore an employee of MDOC who discharged a governmental function—regulating prison property—when evaluating Jordan's grievances. Accordingly, Kendall is an officer or employee of the state under MCL 600.6419(7). This case was therefore one against an officer of the state and the Court of Claims thus had jurisdiction over it. See MCL 600.6419(1)(a).

Jordan's argument to the contrary is unpersuasive because he relies on mostly outdated caselaw. He cites several cases from the 1980s and 1990s to support his position.[6] Jordan's reliance on these cases is misplaced for the same reason: they were all decided before the Legislature amended MCL 600.6419 in 2013. Before the 2013 amendment, the general jurisdictional provision of the Court of Claims Act provided that the Court of Claims had jurisdiction "[t]o hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms or agencies." MCL 600.6419(1)(a), as enacted by 1984 PA 212, effective July 9, 1984. "This provision ha[d] been interpreted to mean that the Court of Claims ha[d] exclusive jurisdiction over suits against public officials acting in their official capacities as well as suits against state agencies or departments." *Grunow v Sanders*, 84 Mich App 578, 581; 269 NW2d 683 (1978).

---

[6] Jordan cites *Burnett v Moore*, 111 Mich App 646, 648; 314 NW2d 458 (1981) (involving state police trooper), and *Hamilton v Reynolds*, 129 Mich App 375, 379; 341 NW2d 152 (1983) (involving director of psychiatric hospital), for the proposition that the director of a state facility or a prison warden qualify as state officers for purposes of Court of Claims jurisdiction. Positions he contends do *not* qualify as state officers include Michigan State Troopers, see *Burnett*, 111 Mich App at 648, prison guards, see *Lowery v Dep't of Corrections*, 146 Mich App 342, 349; 380 NW2d 99 (1985), prison work camp supervisors, see *Bandfield v Wood*, 104 Mich App 279; 304 NW2d 551 (1981), or anyone in an administrative position, see *Haider v Mich Technological Univ*, unpublished per curiam opinion of the Court of Appeals, issued June 13, 1997 (Docket No. 183350). Unpublished opinions of this Court are not binding authority but may be considered for their persuasiveness. See *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 9. The opinions he cites decided before November 1, 1990, are not strictly binding pursuant to MCR 7.215(J)(1), but, as published opinions, they nevertheless have "precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *id*. at ___; slip op at 5 n 1. This rule applies to other pre-November 1, 1990 cases cited in this opinion.

As Kendall points out, the only post-2013 decision Jordan cites is *Council of Orgs & Others for Ed About Parochiaid v Michigan*, 321 Mich App at 456. This case is distinguishable. First, the critical issue in *Council of Orgs* was intervention. See *id.* Members of the state legislature, in their private capacities, and private organizations sought to intervene as defendants in a case involving public funds for private schools. *Id.* at 459-463. Intervention is not at issue in this case. Second, this Court's determination that the Court of Claims lacked jurisdiction over the intervening defendants, state legislators—acting in their individual capacities—and private organizations, in *Council of Orgs* hinged on the fact they were "nonstate actors." *Id.* at 465-470. Essentially, in *Council of Orgs*, the intervening defendants sought to piggyback on the Court of Claims' existing jurisdiction because of their personal interests in the suit. See *id.* Jurisdiction otherwise was not largely in dispute. Here, there is no dispute that Kendall is a state actor; he is an employee of MDOC who was acting in his official capacity when he determined that Jordan's mittens and glue were contraband. *Council of Orgs* therefore does not support Jordan's position. We conclude that the Court of Claims had jurisdiction over this case.

## IV. SUMMARY DISPOSITION

### A. FACTUAL FINDINGS UNDER MCR 2.116(C)(8)

Jordan argues that the Court of Claims erred when it granted summary disposition under MCR 2.116(C)(8) because it relied on documentary evidence attached to Kendall's dispositive motion and made factual findings. We agree.

The Court of Claims concluded that the applicable policy directives "prohibit[ed] prisoners from possessing gloves like the ones taken from [Jordan]" and that the "Gorilla Glue was properly considered contraband because it was not a water-based liquid as required by PD 05.03.102(N)(6)." The court's conclusions regarding the mittens and Gorilla Glue included factual determinations (i.e., that sheepskin is suede or leather; that Gorilla Glue is not water-based). The court therefore looked beyond the pleadings and inappropriately made factual findings. Summary disposition was, accordingly, improper under MCR 2.116(C)(8).

### B. GORILLA GLUE

We may nevertheless affirm the trial court when it reaches the right result, even if for the wrong reason. *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). We address the Gorilla Glue issue first. Here, PD 05.03.102(N)(6) provides that "[l]iquids and gels, including all paints, must be water-based." Gorilla Glue is a liquid or gel, so it must be water-based for a prisoner to possess it as a hobbycraft material. Kendall found that the Gorilla Glue "is not water based . . . ." To be clear, that Gorilla Glue is not water based is a factual conclusion, but it is a conclusion that Jordan did not dispute during the administrative process or in the trial court, and one that does not dispute on appeal. He conceded at oral argument that the glue was not water-based. There is therefore no factual dispute that it was prohibited under PD 05.03.102(N)(6), absent some other administrative carveout.

Jordan contends that PD 05.03.102(M) allowed him to retain possession of the Gorilla Glue because he presented evidence that "the warden's designee had authorized [him] to purchase and possess the Gorilla Glue." That evidence, as far as we can tell, is an affidavit from Jordan

indicating that he ordered the glue in May 2020 and received it in mid-July 2020; an order form dated what appears to be May 28, 2020, for two eight-ounce bottles of Gorilla Glue; and a receipt indicating that Jordan received "2 gorilla glue" on July 17, 2020. The order form indicates that Jordan was at LRF when he ordered the Gorilla Glue. And though it does not say LRF on the receipt, the receipt is signed by the same individual who signed the order form as the "R.U.M or Authorized Agent."

PD 05.03.102(M) provides, in relevant part, that "[t]hat prisoners shall be permitted to use only those hobbycraft materials and supplies authorized for use by the Warden or designee for the hobbycraft activities in which the prisoner is participating." PD 05.03.102(M). According to Kendall's administrative hearing report, Jordan stated to Kendall that he was " 'authorized to order [the Gorilla Glue] at LRF.' " Even if true, Jordan transferred to ARF, which is where the glue was confiscated. That he was permitted to possess the glue at LRF (though it appears this may have been improper under 05.03.102(N)(6))[7] does not mean he would automatically be allowed to possess it at ARF.

In conclusion, the Court of Claims improperly granted summary disposition of Jordan's claim-and-delivery action related to the Gorilla Glue under MCR 2.116(C)(8), but we affirm that decision under MCR 2.116(C)(10). The uncontradicted evidence showed that Gorilla Glue is a non-water-based liquid, so it was prohibited under PD 05.03.102(N)(6). Jordan conceded at oral argument that the "Gorilla Glue" at issue here is a non-water-based liquid. He only challenges the confiscation based on his authorization to purchase it. It is immaterial whether Jordan had authorization to possess the Gorilla Glue while he was imprisoned at LRF because he was subsequently transferred to ARF, which is where the glue was confiscated and determined to be contraband.[8]

---

[7] PD 05.03.102(N) states that "[h]obbycraft materials and supplies . . . are subject to the following restrictions[,]" which includes the limitation that liquids and gels "be water-based." This serves as a limitation on PD 05.03.102(M). That is, although a warden or designee may authorize a prisoner to use certain hobbycraft materials and supplies under PD 05.03.102(M), that authorization is still subject to the restrictions outlined in PD 05.03.102(N). Indeed, as noted, Lundy and Thomas indicated in the Step I Grievance Response Form that Jordan was "authorized to purchase the Gorilla Glue at LRF even though it violated policy."

[8] We note PD 05.03.102(P), which governs hobbycraft materials and prison transfers. It provides:

> If a prisoner with hobbycraft materials or supplies transfers to a facility which does not offer at the prisoner's security level a hobbycraft activity for which the same materials and supplies are authorized, the materials and supplies not allowed at that facility shall be disposed of as set forth in PD 04.07.112 "Prisoner Personal Property"; this includes storing the items if the prisoner is placed in security Level IV or V if storage is required by PD 04.07.112. If the receiving facility does offer a hobbycraft activity at the prisoner's security level for which any or all of the same materials or supplies are authorized, those materials and/or supplies which are authorized shall be stored for the prisoner for at least 30 calendar

## C. SHEEPSKIN MITTENS

The next issue relates to the sheepskin mittens. Jordan raises two arguments related to the mittens. First, he argues that summary disposition was inappropriate and the mittens should be returned to him because PD 04.07.112(L)(10) prohibited suede and leather gloves, not sheepskin gloves. We disagree.

Here, PD 04.07.112(L)(10) prohibits winter gloves or mittens unless they are "single-layered construction and either knit or cloth construction. Suede, leather, and similar artificial materials are prohibited." PD 04.07.112(L) is subject to PD 04.07.112(M). Subsection (M) provides that prisoners are allowed to

> possess and wear personal winter coats, winter jackets, winter gloves, and winter mittens that were legitimately in their possession prior to January 12, 1998 provided they fit within allowable property limits, even if they are not machine washable or do not meet the requirements set forth in Paragraph L, numbers 1, 4, and 9, and the attachments to this policy. [PD 04.07.112(M).]

There is no genuine issue of material fact regarding whether Jordan could retain possession of his sheepskin gloves under PD 04.07.112(L)(10). Jordan seems to misread that policy directive. During the grievance process, he appeared to believe that it allowed him to possess winter gloves or mittens. It instead *prohibits* possession of winter gloves or mittens *unless* they are "single-layered construction and either knit or cloth construction." PD 04.07.112(L)(10). And it explicitly prohibits gloves or mittens that are "[s]uede, leather, [or a] similar artificial material[] . . . ." *Id.* There is no factual dispute that the sheepskin gloves are prohibited under PD 04.07.112(L)(10). Even if they are not suede, leather, or a similar artificial material, there is no dispute that the gloves are neither knit nor cloth construction. Accordingly, the trial court properly granted summary disposition as it relates to Jordan's argument under PD 04.07.112(L)(10).

Second, Jordan argues that because he purchased the mittens in 1996, PD 04.07.112(M) allows him to possess the mittens, even if they do qualify as suede or leather that is otherwise prohibited under PD 04.07.112(L)(10). Jordan did not raise his argument that he has owned the gloves since 1996 in Step I, II, or III of the grievance process and he has thus failed to exhaust his administrative remedies as it relates to this argument. See MCL 600.5503(1) (requiring exhaustion of all available administrative remedies as a precondition to filing an action). The Court of Claims therefore properly granted summary disposition of this claim, albeit under the wrong subrule.

It is well settled that a claimant must exhaust administrative remedies within an agency before seeking judicial review of the agency decision. See *Wilcox v Wheatley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358630); slip op at 3; *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 51-54; 620 NW2d 546 (2000). Further, the PLRA

---

days to permit the prisoner an opportunity to apply to participate in the hobbycraft activity. [PD 05.03.102(P).]

provides "certain requirements that apply when a prisoner brings a civil action concerning prison conditions." *Anderson v Myers*, 268 Mich App 713, 715; 709 NW2d 171 (2005) (quotation marks and citations omitted). This includes the requirement that "[a] prisoner shall not file an action concerning prison conditions until the prisoner has exhausted all available administrative remedies." MCL 600.5503(1).

Throughout the grievance process, Jordan argued that Kendall improperly retained possession of the sheepskin mittens because prison policy (PD 04.07.112(L)(10)) allowed him to possess them. At Step I, Jordan asserted that his mittens were not suede, but sheepskin, and that prison policy "authorize[d] [him] to possess 'Winter gloves/mittens . . . .' " He contended that, at the grievance hearing, Kendall "admitted [the] mittens were Sheepskin." There was no mention of Jordan having purchased the mittens in 1996 in his Step I grievance. Nor did he raise his claim that he bought the mittens in 1996 in his Step II or Step III appeals. Jordan's Step II appeal essentially reiterates the same point in his Step I grievance—that prison policy allowed possession of winter gloves or mittens, and Kendall's retention of the mittens violated that policy. And his Step III appeal only stated that Kendall "violated policy because item *NOT* contraband." Jordan therefore never raised his argument that he was entitled to return of the mittens under PD 04.07.112(M) during the administrative grievance process.[9] See PD 03.02.130 (relating to prisoner grievances); *Burton v Jones*, 321 F3d 569, 574 (CA 6, 2003), abrogated on other grounds by *Jones v Bock*, 549 US 199; 127 S Ct 910; 166 L Ed 2d 798 (2007) ("We understand these policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process").[10] Because he did not raise the issue during the grievance process, instead first raising it in the circuit court then Court of Claims, he did not exhaust his administrative remedies. Accordingly, although the Court of Claims improperly granted summary disposition of this claim under MCR 2.116(C)(8), summary disposition was appropriate under MCR 2.116(C)(4). *Rudolph Steiner Sch of Ann Arbor*, 237 Mich App at 730.

We affirm.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

---

[9] Even if Jordan raised his argument related to PD 04.07.112(M) and having owned the mittens since 1996 at the administrative hearing before Kendall, there is no documentary evidence supporting that beyond Jordan's own affidavit. And because he did not raise this argument during his Step I, II, or III appeals, he failed to exhaust his administrative remedies.

[10] Although not binding on state courts, lower federal court decisions may be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).